IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

_____

No. 17-0692

_____

FILED

**May 10, 2018**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*IN RE* GUARDIANSHIP OF K.W., M.W., and A.W.

_____

Appeal from the Circuit Court of Cabell County
Honorable Alfred Ferguson, Judge
Civil Action No. 16-FIG-16

REVERSED AND REMANDED

_____

Submitted: April 10, 2018
Filed: May 10, 2018

Michael S. Bailey, Esq.
BAILEY LEGAL SERVICES, PLLC
Barboursville, West Virginia
Counsel for Petitioners

Arik C. Paraschos, Esq.
SAMMONS, OLIVERO & PARASCHOS
Huntington, West Virginia
Guardian ad Litem for K.W., M.W., and A.W.

G.T. and D.T., pro se
Respondents

JUSTICE WALKER delivered the Opinion of the Court.

## SYLLABUS BY THE COURT

1.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."  Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

2.      Consistent with the plain language of Rule 13 of the Rules of Practice and Procedure for Minor Guardianship Proceedings and Rule 48a of the Rules of Practice and Procedure for Family Court, once a family court removes an infant guardianship case to circuit court because the basis for the guardianship is, in part, abuse and neglect, the case, in its entirety, remains in circuit court and may not be remanded.

3.      "Rule 48a(a) of the West Virginia Rules of Practice and Procedure for Family Court requires that if a family court presiding over a petition for infant guardianship brought pursuant to W. Va. Code § 44-10-3 learns that the basis for the petition, in whole or in part, is an allegation of child abuse and neglect as defined by W. Va. Code [§ 49-1-201], then the family court is required to remove the petition to circuit court for a hearing thereon.  Furthermore, '[a]t the circuit court hearing, allegations of child abuse and neglect must be proven by clear and convincing evidence.' West Virginia Rules of Practice and Procedure for Family Court 48a(a)."  Syllabus Point 7, *In re Abbigail Faye B.*, 222 W. Va. 466, 665 S.E.2d 300 (2008).

i

4.     A temporary guardianship granted over the natural parents' objection based on substantiated allegations of abuse and neglect does not provide a permanent solution for child custody such that it obviates the need for an abuse and neglect petition.

WALKER, Justice:

In this appeal we consider the validity of a family court order granting permanent guardianship of K.W., M.W., and A.W.[1] to their maternal grandparents, D.T. and G.T.  The case was originally removed from family court to circuit court because the preceding petition for temporary guardianship was based on allegations of abuse and neglect.  However, contrary to Rule 13 of the Rules of Practice and Procedure for Minor Guardianship Proceedings (Rule 13) as well as Rule 48a of the Rules of Practice and Procedure for Family Court (Rule 48a), which provide that once removed to circuit court, neither the matter, nor any portion of it, may be remanded back to family court, the circuit court remanded this case back to family court to proceed as a guardianship case rather than an abuse and neglect case.  The circuit court reasoned that the case was unnecessarily removed to circuit court because the children were under the protection of a then-temporary guardianship order.  L.W. and S.W., the biological parents, argue that the family court lacked subject-matter jurisdiction to grant the permanent guardianship because the matter was improperly remanded from the circuit court to family court.  We conclude that because the allegations of abuse and neglect were substantiated, the circuit court erred in concluding that the temporary guardianship order negated the need for the abuse and neglect petition and therefore erred in remanding the matter to family court.  Accordingly, the permanent

_____

[1] Due to the sensitive facts of this case, we protect the identities of the parties involved by using their initials rather than full names.  *See* W. Va. R. App. P. 40.  *See e.g.*, *In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013).

1

guardianship order is vacated for want of subject-matter jurisdiction. We remand this matter to the circuit court for further proceedings under Chapter 49 of the West Virginia Code, with instructions that during the pendency of those proceedings, the children will remain in the temporary guardianship of their maternal grandparents unless the circuit court deems them unfit for that task.

## I. FACTUAL AND PROCEDURAL BACKGROUND

K.W., M.W., and A.W. are the biological children of Petitioners L.W. and S.W. In late April of 2015, L.W., the mother, filed a domestic violence petition against S.W., the father, and sought a protective order for herself and her three children. The mother's petition alleged that the father "shoved [her] forcefully into a wall in [their] home," "grabbed the back of [her] neck and pushed [her] head to [her] chest," and further stated that this incident was the latest of many episodes of physical violence throughout the history of their marriage. The Family Court of Cabell County granted the domestic violence protective order (DVPO) for a period of 180 days to expire November 2, 2015, and allowed the father to have supervised visitation with the three children. Shortly thereafter on May 18, 2015, a criminal complaint was issued against the father for violation of the DVPO because he went to the residence, pounded on the door, and repeatedly texted and called L.W. The following day, the mother filed a motion to modify the DVPO to suspend all visitation and to extend the terms until November 30, 2015. The family court

granted that motion and appointed Arik Paraschos as Guardian ad Litem for the three children.

Upon appointment, the Guardian ad Litem met and interviewed the mother. She provided a lengthy account, in writing, of the extensive and ongoing physical and emotional abuse in their home.[2] She recounted episodes when the father shoved her up against the wall while she was pregnant, and frequently pushed her, slapped her, and kicked her. She reported an incident when the father told her he was going to kill her and began choking her, but stopped when K.W. entered the room. The father was arrested for that incident, but his charges were reduced to disorderly conduct and he was sentenced to six months of probation and anger management classes. She also reported that even after undergoing anger-management classes, the father head-butted her in the face—breaking her nose—in front of their children, and choked her in front of them earlier that year. Despite multiple attempts at marriage counseling, the mother reported that the physical and emotional abuse was extensive and ongoing.

---

[2] The mother stipulated to the authenticity and truth of the matters asserted in this document and does not dispute that there has been a history of abuse in their home. The father likewise stipulated to the truth of the matters asserted in this document, but acknowledged that because it was told through the mother's perspective, he would have some "fill-in-the-gaps" type of evidence to offer as a supplement. The parents' position is that they are rehabilitated as a result of counseling.

As to her children, the mother indicated that the father previously slapped K.W. leaving a red handprint on her face and also slapped A.W. She also recounted that she saw the father cover K.W. and A.W.'s mouths and noses with his hand so as to smother them. She alleged that the father was verbally abusive to all three children, and was controlling and aggressive. Any time the mother attempted to step in to protect the children from his abuse, she reported that he would physically abuse her as well. The mother expressed considerable concern that the father had been very harsh, emotionally, to K.W. and caused many of the anxiety issues she suffered, and also detailed that her other children suffered from anxiety disorders, as well. She reported that K.W. and A.W. have suffered from mouth ulcers as a physical manifestation of their anxiety and stress, and that K.W. also suffers from insomnia. As a result of their anxiety issues, the mother reported that the children had been in and out of public school and homeschooled. All three children participate in counseling in an attempt to remedy the issues. These issues were exacerbated when visiting with their father in the duration of the DVPO, to the point that K.W. told her mother that she would "kill [herself] before [she would] visit with him again." The mother also stated to the Guardian ad Litem that she observed an obvious improvement in the physical, mental, and emotional health of all three children since they ceased contact with their father.

The Guardian ad Litem also interviewed the children, all of whom indicated that they had no desire to have contact with their father. K.W. confirmed L.W.'s accounts

4

of instances when she witnessed her father physically abusing her mother. She reported witnessing her father head-butt her mother, breaking her nose, recalled that her mother was often covered in bruises on her body, and stated that her father choked her mother until she was unconscious on more than one occasion. K.W. confirmed the abuse she suffered as well, including, specifically, that her father slapped her on multiple occasions, that he pinned her on a bed suffocating her with his chest and stomach, and that he held her down and covered her nose and mouth with his hand. K.W. also reportedly told the Guardian ad Litem that "she was sure her father would kill one of them eventually."

The Guardian ad Litem reported that K.W. was reluctant to have contact with her mother because her mother had been physically abusive to her as well, and had been present for much of the abuse yet did nothing to stop it. K.W. reported that her mother hit her with a dowel rod and that she slammed her head on the table, which A.W. confirmed she witnessed. After a stint when the parents were separated, K.W. reported that she objected to them getting back together and her mother tackled her and struck her.

A.W. reported that in the past, her father struck her with a dowel rod, struck her in the face, busted her lip, and hit her in the back of the head on several occasions. A.W. reported that often her mother was present for the abuse, but sometimes was not, and that she did not feel safe with her parents. M.W., the youngest child, reported that she saw her father push her mother against the wall and saw him choke her. M.W. expressed a

5

desire to live with her mother, but also stated that she wanted to live with A.W., and A.W. would not live with their mother.

In early August 2015, the father petitioned the family court to modify the protective order to grant him unsupervised visitation, which was denied. In late August, the mother filed a petition to terminate the DVPO because separate residences had been established and she no longer felt that there was a risk of violence. In response, the Guardian ad Litem presented his report attesting to the purported abuse that had been reported to him, and recommending that the children continue to have no contact with their father. The family court denied the petition to terminate the DVPO, but permitted the children to have visitation with their father if their therapist and the family court approved it. The family court did not refer the case to Child Protective Services (CPS) nor did it remove the case to circuit court as a cross-over case because the mother did not intend to expose the children to the father at that time.

The mother filed for divorce on October 20, 2015, and Mr. Paraschos was appointed as Guardian ad Litem for those proceedings as well. Shortly thereafter, the parents reconciled and the divorce petition was voluntarily dismissed on March 9, 2016. Presumably aware that the parties were reconciling, D.T. and G.T., the children's maternal grandparents, filed a petition for guardianship just days before the divorce petition was dismissed, alleging that the children were in danger. The family court held an emergency

6

hearing and granted the maternal grandparents temporary guardianship of the three children, finding that the father was a threat to his children and that the mother failed to protect them. Accordingly, it also imposed a no-contact order between the children and their parents. The family court, acknowledging that allegations of abuse and neglect formed the basis of the guardianship petition, removed the case to circuit court in accordance with Rule 48a and Rule 13, and made a referral to the Department of Health and Human Resources (DHHR).

The circuit court directed DHHR to conduct an investigation and report its findings to the circuit court. DHHR substantiated that there had been maltreatment and impending danger and opened the case for ongoing CPS intervention. At a hearing on May 4, 2016, DHHR provided the circuit court with a summary of its findings and indicated that its petition for abuse and neglect had been previously submitted to the Cabell County Prosecuting Attorney's Office to be filed. During the hearing, the Guardian ad Litem recommended to the court that the matter be remanded to family court because the children were no longer in danger of abuse at the hands of their parents by virtue of the fact that they were presently in the custody of their grandparents. Counsel for DHHR indicated that she had serious concerns due to the extensive history of abuse, but conceded that "if the children are going to remain with the grandparents, then from the Department's perspective, I guess the abuse has been addressed. I just don't want a situation where they

will be petition [sic] in the next year or two trying to move the children back with them saying things have changed."

The circuit court concluded that the children were adequately protected by the family court's temporary order granting guardianship to the maternal grandparents and prohibiting contact with the parents. Therefore, finding that a petition for abuse and neglect was unnecessary, the circuit court concluded that the matter could be remanded back to family court for guardianship proceedings. The parents filed a motion for reconsideration arguing that remand to family court was inappropriate in light of the plain language of Rule 48a and Rule 13 prohibiting remand of any portion of a case when it had been removed to circuit court under those rules. The circuit court denied the motion. Accordingly, the CPS case worker informed the father that because the circuit court did not accept the case and it was being referred back to family court that CPS would no longer be involved with his family. She advised him that he would have to abide by all rulings and orders made by the family court and that his daughters remained in the temporary legal and physical custody of their maternal grandparents.

On October 5, 2016, the maternal grandparents filed a petition for permanent guardianship of the children. Two weeks later, the family court held an evidentiary hearing on the permanent guardianship, during which the parents again objected to the family court's jurisdiction. The family court noted their objection but proceeded with the hearing,

acknowledging that the circuit court had already twice determined that remand was appropriate. The family court held a lengthy hearing and heard testimony from the Guardian ad Litem, the father's Batterer Intervention Program therapist, the children's psychologist, the parents' psychologist, the maternal grandmother, and the mother. Ultimately, the family court found that all three children had witnessed extreme domestic violence; all three children suffered psychological abuse at the hands of their parents; the two older children suffered physical abuse at the hands of their father; K.W., the eldest, had suffered physical abuse at the hands of her mother; and that K.W., being over the age of 14, had expressed a preference to live with her grandparents. Based on these findings, the family court concluded that the maternal grandparents should be the permanent guardians of the three children. The family court put in place a no-contact order as to the father and a limited electronic contact order as to the mother, with the possibility for increasing contact if the children's psychologist and the Guardian ad Litem agreed it was appropriate.

The parents filed objections to the order as prepared by the Guardian ad Litem, arguing that the findings and conclusions were factually inaccurate and did not reflect the court's findings at the hearing. The family court overruled that objection and entered the order. The parents filed a motion for reconsideration with the family court, which was denied. The parents then filed an appeal to the circuit court and raised the impropriety of the remand from circuit court to family court. The circuit court denied the

9

appeal, finding that "it does not make logical sense to interpret Rule 13 of the Rules for Minor Guardianship Proceedings and Rule 48a of the Rules [of] Practice and Procedure of Family Court to give the Circuit Court absolutely no discretion on whether or not to accept a crossover case when they find a case should not have been referred to the Circuit Court." It is from that order that the parents appeal to this Court.

## II.    STANDARD OF REVIEW

We are asked to determine whether the circuit court properly disregarded Rule 13 and Rule 48a when it remanded this case to the family court with instructions to proceed as an infant guardianship case as opposed to an abuse and neglect matter. More pointedly, we must determine whether the family court had subject-matter jurisdiction to grant permanent guardianship in this case. "Whether a court has subject matter jurisdiction over an issue is a question of law[.]"[3] Similarly, inquiry into the issue of subject-matter jurisdiction necessarily implicates a review of the court rules relevant to the circuit court's remand. Accordingly, our review is plenary: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."[4]

---

[3] *Snider v. Snider*, 209 W. Va. 771, 777, 551 S.E.2d 693, 699 (2001).

[4] Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

# III. ANALYSIS

On appeal, the parents reiterate the jurisdictional argument made below, namely, that the circuit court erred in remanding the matter to family court. As a consequence of the improper remand, the parents argue that the family court's grant of permanent custody was made without subject-matter jurisdiction and should be nullified. The parents also argue that the family and circuit courts erred by granting and upholding permanent guardianship to the maternal grandparents and divesting them of their constitutional rights to the custody of their children without a specific finding of unfitness, and that the permanent guardianship order effectually terminated their parental rights without offering them the procedural safeguards of child abuse and neglect proceedings under Chapter 49 of the West Virginia Code.

The parents argue that Rule 48a of the Rules of Practice and Procedure for Family Court and Rule 13 of the Rules of Practice and Procedure for Minor Guardianship Proceedings[5] are undeniably clear—those rules provide, in relevant part, the following:

> *Removal by a family court to circuit court of infant guardianship cases involving child abuse and neglect.* — If a family court learns that the basis, in whole or part, of a petition for infant guardianship brought pursuant to W. Va. Code § 44-10-3, is an allegation of child abuse and neglect as defined in

---

[5] Rule 48a of the Rules of Practice and Procedure for Family Court and Rule 13 of the Rules of Practice and Procedure for Minor Guardianship are duplicative rules that contain the same language. We include references to both only to ensure that this Opinion is understood as applicable to both.

> W. Va. Code § [49-1-201],[6] then the family court before whom the guardianship proceeding is pending shall remove the case to the circuit court for hearing. . . . Once removed, the case (or any portion) shall not be remanded to family court. . . .

The Guardian ad Litem does not dispute that the remand was technically error based on a plain reading of this rule.  Rather, he supports the circuit court's remand by relying on the fact that the family court and circuit court have concurrent jurisdiction in guardianship matters as well as arguing that Rules 13 and 48a impose an arbitrary requirement to remand.[7]

---

[6] The text of Rule 48a retains the reference to precodification section (W. Va. Code § 49-1-3).  As reflected in Rule 13, that section was recodified as West Virginia Code § 49-1-201.

[7] Because the arguments advanced by the grandparents in both their brief and subsequent correspondence to this Court vacillate dramatically, we reference the arguments of the Guardian ad Litem for purposes of deciding the legal issue before us.  For example, the grandparents recanted their prior sworn statements that the parents were unfit and went so far as to allege that it was abuse to keep the children away from their parents.  In their summary response, the grandparents indicated that they had been pressured by Mr. Paraschos to file for guardianship and never believed that the children were in danger, despite the fact that they had made sworn statements to the contrary and were represented by their own counsel at that time.  Shortly before oral argument, this Court was provided with a letter and attachments from the maternal grandmother alleging that they were pressured by the parents to file the response brief to this Court in which they recanted their prior statements, and now deeply regretted doing so.  As a result, this Court accords scant merit to the arguments and representations made by the grandparents in this appeal.

While the opposition to the parent's legal arguments is sufficiently briefed by the Guardian ad Litem, due to the ambivalence and recklessness with which the grandparents have approached the allegations and retractions they have made under oath and to this Court, we are left with weighty factual questions such that the ultimate disposition of these children may be affected.  The gravity of these already-troubling circumstances is

Indeed, the family court and circuit court have concurrent jurisdiction in guardianship matters pursuant to Rule 2 of the Minor Guardianship Rules, but, as explained in that rule, the family court's jurisdiction is subject to the removal provisions in Rule 13. The removal provisions of Rule 13 and Rule 48 are abundantly clear that "[o]nce removed, the case (or any portion) shall not be remanded to family court." Consistent with the plain language of Rule 13 of the Rules of Practice and Procedure for Minor Guardianship Proceedings and Rule 48a of the Rules of Practice and Procedure for Family Court, once a family court removes an infant guardianship case to circuit court because the basis for the guardianship is, in part, abuse and neglect, the case, in its entirety, remains in circuit court and may not be remanded. As we held in *In re Abbigail Faye B.*,

> Rule 48a(a) of the West Virginia Rules of Practice and Procedure for Family Court requires that if a family court presiding over a petition for infant guardianship brought pursuant to W. Va. Code § 44-10-3 learns that the basis for the petition, in whole or in part, is an allegation of child abuse and neglect as defined by W. Va. Code [§ 49-1-201], then the family court is *required* to remove the petition to circuit court for a hearing thereon. Furthermore, "[a]t the circuit court hearing, allegations of child abuse and neglect must be proven by clear and convincing evidence." West Virginia Rules of Practice and Procedure for Family Court 48a(a).[8]

---

underscored by our inability to discern whether or not the grandparents, the guardians of these children for the past two years, believe the children to be in danger from their parents, whether they might expose the children to their parents, and whether they wish for the guardianship to remain in place.

[8] Syl. Pt. 7, *In re Abbigail Faye B.*, 222 W. Va. 466, 665 S.E.2d 300 (2008) (emphasis added).

13

This is consistent with our holdings relating to the scope of family court jurisdiction: "Among such limits imposed upon a family court's jurisdiction are the inability of a family court to hear a matter involving child abuse or neglect insofar as such cases are within the exclusive authority of the circuit court . . . ."[9] Accordingly, the family court appropriately entered an order for temporary guardianship as contemplated in Rule 13 and 48a as well as West Virginia Code § 44-10-3,[10] and relinquished jurisdiction to the circuit court for investigation and filing of a child abuse and neglect petition, if so warranted. The circuit court, though aware that the allegations of abuse and neglect were substantiated and that a petition was forthcoming, nonetheless remanded the case to family court. The circuit court justified the remand based on the Guardian ad Litem's assertions that the children were no longer in danger because they were, at the time of the hearing, in the custody of their grandparents and adequately protected by the family court's order, which also prevented contact between the children and their parents.

---

[9] *In the Interest of J.L., Jr.*, 234 W. Va. 116, 120, 763 S.E.2d 654, 658 (2014).

[10] Rules 13 and 48a provide, in relevant part, that "[s]hould the family court learn of such allegations of child abuse and neglect during the hearing, then the family court shall continue the hearing, subject to an appropriate temporary guardianship order, and remove the case to the circuit court . . . ." West Virginia Code § 44-10-3, which sets forth the requirements for appointment and termination of minor guardianships, provides that "the court may appoint a temporary guardian for a minor upon a showing that an immediate need exists[.]" W. Va. Code § 44-10-3(g) (2016 Repl. Vol.).

14

While the Guardian ad Litem acknowledges that the remand was technically in error, he nonetheless argues that Rule 13 and Rule 48a arbitrarily deprive the circuit court of any discretion to remand the case to family court when DHHR or the court concludes it is unnecessary to file a petition, while Rule 3a of the Rules of Procedure for Child Abuse and Neglect Proceedings (Rule 3a) permits a circuit court to decline jurisdiction under those same conditions. Rule 3a dictates procedure for pre-petition investigations. Rule 3a(b), to which the Guardian ad Litem refers, provides in relevant part:

> **Mandamus Relief**. — Following review of an investigation report in which the Department concludes that a civil petition is unnecessary, if the circuit court believes that the information in the family court's written referral and the Department's investigation report, considered together, suggest circumstances upon which the Department would have a duty to file a civil petition, the court shall treat the written referral as a petition for writ of mandamus in the name of and regarding the affected child or children. A show-cause order shall issue by the court setting a prompt hearing to determine whether the respondent Department has a duty to file a civil petition under the particular circumstances set forth in the written referral and investigation report. If it is determined by the court that the Department has a nondiscretionary duty pursuant to W. Va. Code § 49-4-605 to file a petition seeking to terminate parental rights, the Department shall be directed by writ to file such petition within a time period set by the court. . . .

Unlike Rules 13 and 48a, Rule 3a, the Guardian ad Litem argues, allows the circuit court to look at factual circumstances in a family court referral and to determine whether to require DHHR to file a petition of abuse and neglect if DHHR finds it is

15

unnecessary. Ergo, if the circuit court, in the exercise of its discretion, does not require DHHR to file the petition, it effectively declines jurisdiction over the proceeding and the family court maintains jurisdiction. The Guardian ad Litem argues that the outcome should be no different in the context of guardianship proceedings because the circuit court exercised sound discretion in remanding the matter to family court once it perceived that a petition for abuse and neglect was unnecessary.

Based on the facts before us, we find that argument unpersuasive because it grossly oversimplifies DHHR's position regarding the need for a petition for abuse and neglect against the parents. In this case, DHHR substantiated the allegations of abuse and had already sent the petition to the Cabell County Prosecuting Attorney's Office to be filed. To say that DHHR believed that a petition for abuse and neglect was *unnecessary* fundamentally misstates the representations made to the circuit court below and misappropriates the intent and principle of Rule 3a. Rule 3a permits a circuit court to "decline jurisdiction" by accepting DHHR's conclusions in the investigative report that a petition is unnecessary *due to unsubstantiated allegations of abuse or neglect*.[11] No such

---

[11] West Virginia Code § 49-4-605(b) does, however, outline particular circumstances in which DHHR may elect not to file a petition when ordinarily it would have a duty to do so:

> (b) The department may determine not to file a petition to terminate parental rights when:

> (1)    At the option of the department, the child has been placed permanently with a relative by court order;

16

representation was made to the circuit court in DHHR's investigative report. In fact, in addition to its report substantiating the allegations and finding impending danger, DHHR expressed significant concerns regarding the physical and emotional abuse that these children witnessed and endured and, ironically, foreshadowed apprehension that the parents would attempt to regain custody. Thus, the circuit court did not "decline jurisdiction" as contemplated in Rule 3a due to unsubstantiated allegations of abuse. While counsel for DHHR did assent that if the children were going to remain in the custody of their grandparents, from its perspective the abuse was addressed, the fact of the matter is that the children were in the custody of their grandparents by *temporary* order of the family court.

The temporary guardianship put in place by the family court was an attempt to protect these children from their parents in the face of imminent need, not unlike removal by DHHR prior to filing a petition under West Virginia Code § 49-4-303 and temporary custodial placement during the pendency of that proceeding under West Virginia Code §

---

(2)     The department has documented in the case plan made available for court review a compelling reason, including, but not limited to, the child's age and preference regarding termination or the child's placement in custody of the department based on any proceedings initiated under part seven [§§ 49-4-701 et seq.] of this article, that filing the petition would not be in the best interests of the child; or

(3)     The department has not provided, when reasonable efforts to return a child to the family are required, the services to the child's family as the department deems necessary for the safe return of the child to the home.

17

49-4-602. In fact, had the grandparents not preemptively sought guardianship before the Guardian ad Litem made DHHR aware that the mother had reconciled with the father, based on DHHR's report, the children would likely have been removed from the parents' home and placed with the maternal grandparents in any case. The form of the transfer of custody does not subvert the substance of it—the children were temporarily removed from their parents' custody due to allegations of abuse and neglect, DHHR substantiated those allegations and provided the prosecutor with a petition for abuse and neglect to proceed against the parents. The circuit court's conclusion that a petition was unnecessary because the children were in the temporary custody of their grandparents is no more sound than concluding that a child's temporary placement with foster parents prior to institution of an abuse and neglect proceeding negates the need for a petition against the parents in and of itself.

This reasoning is consistent with West Virginia Code § 49-4-605, which outlines when DHHR efforts to terminate parental rights are required, and when they are discretionary. In relevant part, that section provides:

> (a)  Except as provided in subsection (b) of this section, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights:
> . . .
>
> (2)  If a court has determined that the child is abandoned, tortured, sexually abused, or chronically abused[.]
>
> * * * *

18

(b)    The department may determine not to file a petition to terminate parental rights when:

(1)    At the option of the department, the child has been placed *permanently* with a relative by court order.[12]

The circuit court was presented with ample evidence that the mother and these children were chronically abused physically and emotionally sufficient to compel DHHR to file a petition against the parents. Yet, it determined that a petition seeking to adjudicate their parental or custodial rights was unnecessary based on the children's *temporary* placement with relatives. The remand was not only contrary to Rules 13 and 48a, but also jurisdictionally precluded the filing of a petition against the parents, which we are of the conviction was DHHR's nondiscretionary duty to file. While we are cognizant that the circuit court was, appropriately, most concerned with assuring the safety of the children in the immediate context, its approach to these particular circumstances of abuse was insufficient procedurally and substantively insofar as it did not contemplate the need for permanency. We therefore hold that a temporary guardianship granted over the natural parents' objection based on substantiated allegations of abuse and neglect does not provide a permanent solution for child custody such that it obviates the need for an abuse and neglect petition.

---

[12] Emphasis added.

Having determined that the need for an abuse and neglect petition existed at the time of the circuit court's remand, and that the circuit court maintains exclusive jurisdiction over such proceedings, we conclude that the circuit court should have retained jurisdiction and its remand to the family court was error. It follows then, that the family court, in issuing its permanent guardianship order, was without subject-matter jurisdiction to do so. Without question, subject-matter jurisdiction "must exist as a matter of law for the court to act."[13] Consequently, "any decree made by a court lacking [subject-matter] jurisdiction is void[,]"[14] and the permanent guardianship must be set aside for want of subject-matter jurisdiction, however situationally appropriate it may have been.[15]

However, because the record before us is replete with corroborated allegations of physical and emotional abuse, which is apparently ongoing even in spite of the no-contact order, we do not find it appropriate, given the already-extended duration of these proceedings and plainly manifested danger to the children, to return custody of the

---

[13] *State ex rel. Smith v. Thornsbury*, 214 W. Va. 228, 233, 588 S.E.2d 217, 222 (2003).

[14] *State ex rel. TermNet Merchant Servs., Inc. v. Jordan*, 217 W. Va. 696, 700, 619 S.E.2d 209, 213 (2005) (citation omitted).

[15] Because we have determined that the permanent guardianship order must be set aside for lack of jurisdiction, it is unnecessary to address the parents' constitutional concerns that the permanent guardianship effectively terminated their parental rights without the protections afforded them by Chapter 49 of the West Virginia Code.

children to their parents.[16] The children will remain in the temporary guardianship of their maternal grandparents pending a hearing to be conducted within ten (10) days of the issuance of this Opinion at which the circuit court will determine whether the maternal grandparents are fit to continue as the temporary guardians of the children.[17] Further, the circuit court is instructed to provide DHHR leave to file an abuse and neglect petition against the parents, if still judged appropriate, and to proceed according to Chapter 49 of the West Virginia Code so as to allow for CPS involvement and development of a permanency plan for these children.

## IV. CONCLUSION

For the foregoing reasons, we reverse the July 10, 2017 order of the Circuit Court of Cabell County and remand for further proceedings consistent with this opinion. The Clerk is directed to issue the mandate concurrently with the opinion.

Reversed and remanded.

---

[16] *See* syl. pt. 6, *In re Timber M.*, 231 W. Va. 44, 743 S.E.2d 352 (2013) ("In cases involving the abuse and neglect of children, when it appears from this Court's review of the record on appeal that the health and welfare of a child may be at risk as a result of the child's custodial placement, regardless of whether that placement is an issue raised in the appeal, this Court will take such action as it deems appropriate and necessary to protect that child.").

[17] *See supra* n.7.