# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2019 Term

_____

No. 18-0972

_____

M.H.,
Petitioner

v.

C.H. and B.H.,
Respondents

FILED

**November 20, 2019**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Daniel W. Greear, Judge
Civil Action No. 17-FIG-183

**VACATED AND REMANDED**

_____

Submitted: November 6, 2019
Filed: November 20, 2019

Clinton W. Smith, Esq.
Law Office of Clinton Smith
Charleston, West Virginia
Counsel for the Petitioner

Tim C. Carrico, Esq.
Carrico Law Offices LC
Charleston, West Virginia
Counsel for the Respondents

JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard.  We review questions of law *de novo*."  Syl. Pt., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2.      "Rule 48a(a) of the West Virginia Rules of Practice and Procedure for Family Court requires that if a family court presiding over a petition for infant guardianship brought pursuant to W. Va. Code § 44-10-3 learns that the basis for the petition, in whole or in part, is an allegation of child abuse and neglect as defined by W. Va. Code [§ 49-1-201], then the family court is required to remove the petition to circuit court[.]"  Syl. Pt. 3, in part, *In re Guardianship of K.W.*, 240 W. Va. 501, 813 S.E.2d 154 (2018).

**Armstead, Justice:**

Respondents, C.H. and B.H.,[1] (the "**Great-Grandparents**") are the great-grandparents of H.L. (the "**Child**") and the grandparents of Petitioner, M.H., who is H.L.'s mother (the "**Mother**"). The Great-Grandparents filed a minor guardianship petition regarding the Child in the Family Court of Kanawha County, alleging that the Child was abused and neglected. Rule 13 of the West Virginia Rules of Practice and Procedure for Minor Guardianship Proceedings provides that when a family court receives a minor guardianship petition that is based on an allegation of child abuse and neglect, the family court shall remove the case to circuit court. Instead of promptly removing the case to circuit court, the family court held an emergency hearing and appointed the Great-Grandparents as temporary guardians of the Child. The family court later held an evidentiary hearing on the petition and entered a final order appointing the Great-Grandparents as guardians of the Child. The Mother appealed to circuit court, and the circuit court affirmed the family court's order. The Mother then filed this appeal.

Based on the record before us, the arguments of the parties, and the applicable law, we find that the family court erred by failing to immediately remove the Great-Grandparents' minor guardianship petition to the circuit court and that the family court was without subject matter jurisdiction to take any other action on the petition.

---

[1] Due to the sensitive facts of this case, we protect the identities of the parties involved by using their initials rather than full names. *See* W. Va. R. App. P. 40. *See e.g.*, *In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R.*, 230 W. Va. 731, 742 S.E.2d 419 (2013).

1

Accordingly, we vacate the family court's orders and the circuit court's order affirming the family court and remand this case to the circuit court for further proceedings in accordance with the West Virginia Rules of Practice and Procedure for Minor Guardianship Proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Child was born in December 2011. His biological father is J.L. (the "**Father**").[2] In or about August or September 2016, when the Child was not yet five, the Mother began working at a new job. According to the Mother, her job required her to report to work at 7:00 a.m., so she arranged with B.H. (the "**Great-Grandmother**") to drop the Child off at the Great-Grandparents' house to catch the school bus. When school was over, the Great-Grandmother would meet the Child at the bus and babysit him at her house until the Mother got off work. The Mother would then pick up the Child and take him home for the night.

Sometime later, the Child began spending nights at the Great-Grandmother's house so the child could wake up later to meet the bus. According to the Mother, she picked up the Child after work and brought him to her home. There she fed him supper, helped him with his school work, and gave him a bath. She then returned him to the Great-Grandmother's house to sleep. The Mother reports that this arrangement lasted "approximately a month."

---

[2] The Father is not a party to this appeal, and we note that he appears to have been served by publication when the Great-Grandparents filed the minor guardianship petition that led to this appeal.

In or about December 2016, the Child appears to have said something at school that, according to the family court, led to "some sort of investigation" by Child Protective Services ("**CPS**").[3] According to the Great-Grandmother, a CPS worker named Vivian Fury came to her home and advised her that CPS would seek to take the Child if the Child left the Great-Grandmother's care.

The Mother says that the CPS worker never contacted *her*. She says that she learned about the alleged CPS investigation, and the alleged threat to take the Child, from the Great-Grandmother, who suggested that the Mother transfer custody of the Child to the Great-Grandmother.

On December 16, 2016, the Mother and the Great-Grandmother signed a one-sentence, notarized document giving the Great-Grandmother "temporary custody of" the Child "until further notice." According to the Mother, she signed the document because she was "[f]earful that CPS would take the Child from her[.]"

The Child remained with the Great-Grandparents. In or about February 2017, the Mother contacted CPS about the status of the alleged investigation. She says she was told "that there had been a case but that it had been 'dropped[.]'" The Mother states that she then asked the Great-Grandmother to return the Child, but the "[Great-]Grandmother stalled and put her off." According to the Great-Grandmother, and as found

---

[3] There is also some indication that the Great-Grandmother called CPS in November 2016 to report a burn on the Child's stomach and blisters on his feet.

by the family court, the Mother did not ask to have the Child back until the end of June 2017.

The Mother claims that she spoke to CPS again at the CPS office on or about June 25, 2017, "and learned there was not an open case." Late that evening, the Mother texted the Great-Grandmother and asked her for the name and phone number of the CPS worker the Great-Grandmother had spoken to. The Great-Grandmother indicated that she did not know, and challenged the Mother to name the person the Mother had spoken to at CPS. The Mother replied that the person to whom she had spoken at CPS said the matter "was there but has been dropped for awhile [and] that I could have my child[.]"

The Great-Grandmother responded that she would "pack all his stuff[,]" but in the texts that followed she made clear that she was uncomfortable with the Child returning home to be babysat by the Mother's boyfriend, A.H., (the "**Boyfriend**") during the summer months when the Child would be off from school.

The Great-Grandmother did not return the Child. Instead, on June 26, 2017, she filed a domestic violence petition against the Boyfriend on behalf of the Child. The parties have not provided us with a copy of the domestic violence petition, but the Mother reports that it accused the Boyfriend of "'whipp[ing]' the child until he 'pooped his pants[]'" and of "lock[ing] the child in a dark room for punishment[.]"

The family court held a final hearing on the domestic violence petition on July 5, 2017, and dismissed the petition. Undeterred, the Great-Grandparents filed—that same day—a petition for minor guardianship pursuant to W. Va. Code § 44-10-3 (2013)

4

(appointment and termination of minor guardianships).  As grounds for their petition, they

made various allegations of abuse and neglect.[4]

---

[4] The Great-Grandmother appears to be the narrator of the following handwritten statement set forth in (and attached to) the petition:

> I have had [the Child] since Sept 2016. – In Nov. 2016 – [the Mother] had got him for a visit and left him with . . . [the Boyfriend]. – NOT THE CHILDS [sic] FATHER.   [The Child] was playing on the deck and somehow the sliding glass door got locked.  He knocked and knocked and could NOt [sic] get [the Boyfriend] to hear him – He knocked LOUDER and [the Boyfriend] pulled him inside and whipped him and he pooped himself.  Either from whipping or so scared.
>
> Also if [the Child] cried or fretted over anything he was locked in a dark room.
>
> [The Child] told this stuff to his school teachers + kids + CPS Got Involved. – Things were going thru – But I had a worker from wood [sic] County "Vivian Fury" and she visited my home + told me to try to get [the Mother] to give me temporary custody of him till things were checked – She did this and I tried and tried to get back with Vivian Fury to see what else I needed to do.  Paperwork was sent back to Kanawha County – so just alot [sic] of confusion –
>
> I have had [the Child] in my home since Sept – AND After Dec 16 – steady.  I have ALWAYS let his mother . . . see him and do stuff with Him – Just caucious [sic] with [the Boyfriend] –
>
> [The Mother] said [the Boyfriend] has Anger issues, he flies off easy when things happen.
>
> She said He is NOW under a Doctors [sic] CARE For This and on medication.

. . . .

> [The Child] told me he cannot make [the Boyfriend] mad or hurt his feelings cause he gets Angry and Punches things.
>
> [The Child] said mommy told him Not to make [the Boyfriend] mad cause he would leave. "[The Child's words]" Afer [sic] he cried over something once – "see what you did you made [the Boyfriend] mad Now hE's [sic] going to leave" Stop it – see what you did"
>
> [The Child] is petrified of a dark room with a door shut – We are still working with him on that –
>
> Also he had burns (one behind his ear + another on his stomach.) I asked what caused them + he said he didn't know and he said mommy Doesnt know – But it had a bubble on it"
>
> [The Mother] works M – F. And I am afraid For him to be with [the Boyfriend] by himself.
>
> [The Child] also showed Grandpa + I where [the Boyfriend] + mommy Get their "weed." . . .
>
> I do not want to cause any trouble I just want [the Child] in A safe place til these issues are settled and [the Boyfriend] gets help for his Temper.
>
> . . . .
>
> There have Not been anymore incedents [sic] since then (Nov. 2016) Because he has been with me – at my house – and I made sure [the Boyfriend] was NOT with him alone.

We understand that a worker from Wood County was assigned because Kanawha County CPS was overwhelmed with work.

6

Also that same day, July 5, 2017, the family court held a hearing on the minor guardianship petition. At 3:30 p.m., the family court judge signed an emergency order appointing the Great-Grandparents as temporary guardians of the Child with "sole decision-making authority." The Mother was granted "supervised parenting time with [the Child] as [sic] the discretion of the [Great-Grandparents]." The Boyfriend was to "have no contact whatsoever with the minor child."

The family court held a final hearing on the minor guardianship petition on September 18, 2017, and entered a final order on October 10, 2017. The final order summarized the parties' testimony and determined, based on *Overfield v. Collins*, 199 W. Va. 27, 483 S.E.2d 27 (1996),[5] that the Mother bore the burden of proving "by . . . clear and convincing evidence that she is fit and proper to have custody returned to her[.]" According to the family court, she failed to carry her burden:

> [The Mother] has not taken any interest or responsibility for this child's educational, medical or overall well-being for the last year; has allowed . . . [the Boyfriend] to whip this child until he used the bathroom on himself; continues to reside with [the Boyfriend] even though he may have abused this child; does not have a bedroom for this child and has only seen the child 5 times since June 26, 2017 and for each of those times for 1 hour or less.

---

[5] *See* Syl. Pt. 2, in part, *Overfield v. Collins*, 199 W. Va. 27, 483 S.E.2d 27 (1996) ("When a natural parent transfers temporary custody of their child to a third person and thereafter seeks to regain custody of that child, the burden of proof shall be upon that parent to prove by clear and convincing evidence that he or she is fit; thereafter the burden of proof shall shift to the third party to prove by clear and convincing evidence that the child's environment should not be disturbed because to do so would constitute a significant detriment to the child notwithstanding the natural parent's assertion of a legal right to the child.")

The final order appointed the Great-Grandparents guardians of the Child's person with "sole decision-making authority[.]" The Mother was "granted regular parenting time with [the Child,]" but the Boyfriend was not to be present.

The Mother appealed to circuit court. On appeal, she argued—among other things—that W. Va. Code § 44-10-3 is unconstitutional because it (allegedly) allows a guardian to be appointed without reference to the parent's fitness. She found similar fault with *Overfield*, contending that it "improperly and unconstitutionally saddled" her with the burden of proving "her own fitness by clear and convincing evidence . . . regardless of whether there was ever any prior finding" that she was unfit (emphasis removed). She did not dispute the family court's jurisdiction.

The circuit court heard argument on the appeal and later affirmed the family court's decision in an order entered on September 26, 2018. In affirming the family court, the circuit court expressed concern that *Overfield*'s assignment of the burden of proof "runs directly in contrast to the precedent supplied by our United States Supreme Court in *Troxel* [*v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000)]." However, the circuit court felt compelled to follow *Overfield*, noting that it "has never been overruled[.]"

The Mother appeals from the circuit court's September 26, 2018 order.

## II. STANDARD OF REVIEW

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

8

Syl. Pt., *Carr v. Hancock*, 216 W. Va. 474, 475, 607 S.E.2d 803 (2004).

## III. ANALYSIS

On appeal, the Mother contends (a) that W. Va. Code § 44-10-3 is unconstitutional; (b) that the family court, in applying *Overfield*, interfered with her fundamental right to make custody decisions; (c) that the family court applied an incorrect standard (and was clearly wrong) when it found that she had failed to prove her fitness; and (d) that the family court granted the guardianship petition without making all of the findings required by W. Va. Code § 44-10-3.

These are serious arguments which must be addressed,[6] but an initial concern before reaching this inquiry is the fundamental question of whether the family court had jurisdiction to consider the minor guardianship petition. The Mother has not raised this issue, but "[i]t is well established that the issue of subject matter jurisdiction can be raised at any time, even *sua sponte* by this Court." *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 345, 801 S.E.2d 216, 223 (2017).[7] "Whether a court has subject matter jurisdiction over an issue is a question of law[.]" *Snider v. Snider*, 209 W. Va. 771,

---

[6] On remand, we urge the circuit court to give due consideration to the Mother's constitutional arguments about the balance between the holdings in *Overfield* and *Troxel*, and to the standards set forth in W. Va. Code § 44-10-3.

[7] *See also* Syl. Pt. 3, *Lewis v. Municipality of Masontown*, 241 W. Va. 166, 820 S.E.2d 612 (2018) ("'Lack of jurisdiction may be raised for the first time in this court, when it appears on the face of the bill and proceedings, and it may be taken notice of by this court on its own motion.' Syllabus Point 3, *Charleston Apartments Corp. v. Appalachian Elec. Power Co.*, 118 W. Va. 694, 192 S.E. 294 (1937).")

777, 551 S.E.2d 693, 699 (2001). Because "jurisdictional issues are questions of law, our review is de novo." *Wilson*, 239 W. Va. at 343, 801 S.E.2d at 221 (citing Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995)).

## A. Family Court Jurisdiction

The West Virginia Constitution provides that "[f]amily courts shall have original jurisdiction in the areas of family law and related matters *as may hereafter be established by law*." W. Va. Const. art. VIII, § 16 (emphasis added). Pursuant to this authority, the Legislature has established that "[t]he circuit court and family court have concurrent jurisdiction to appoint a guardian for a minor." W. Va. Code § 44-10-3(a).

Yet the West Virginia Constitution also provides that family courts "rule on family law and related matters" "under the general supervisory control of the supreme court of appeals[.]" W. Va. Const. art. VIII, § 16. Pursuant to this authority, this Court has promulgated the West Virginia Rules of Practice and Procedure for Minor Guardianship Proceedings, and the Legislature has commanded that "[a]ll proceedings [on a minor guardianship petition] shall be conducted in accordance with" these rules. W. Va. Code § 44-10-3(c).

Rule 2 of the Rules of Practice and Procedure for Minor Guardianship Proceedings establishes that "family court jurisdiction in minor guardianship proceedings is subject to removal under the conditions set forth in Rule 13 of these rules[.]" W. Va. R. Prac. & Pro. Min. Guard. 2(a)(2) (2015). *See also In re Guardianship of K.W.*, 240 W. Va. 501, 508, 813 S.E.2d 154, 161 (2018) ("[T]he family court and circuit court have

10

concurrent jurisdiction in guardianship matters pursuant to Rule 2 of the Minor

Guardianship Rules, but, as explained in that rule, the family court's jurisdiction is subject

to the removal provisions in Rule 13."). Rule 13 provides that,

> [i]f a family court learns that the basis, in whole or part, of a petition for minor guardianship brought pursuant to W. Va. Code § 44-10-3, is an allegation of child abuse and neglect as defined in W. Va. Code § 49-1-201, then the family court before whom the guardianship proceeding is pending *shall remove* the case to the circuit court for hearing. Should the family court learn of such allegations of child abuse and neglect during the hearing, then the family court *shall continue* the hearing, subject to an appropriate temporary guardianship order, *and remove* the case to the circuit court for hearing to be conducted within 10 days, for determination of all issues.

W. Va. R. Prac. & Pro. Min. Guard. 13(a) (2015) (emphasis added). Pursuant to its

constitutional authority, this Court has also promulgated the West Virginia Rules of

Practice and Procedure for Family Court. Rule 48a of the Rules of Practice and Procedure

for Family Court provides for removal under the same circumstances and is virtually

identical to Rule 13.[8]

---

[8] W. Va. R. Prac. & Pro. Fam. Ct. 48a(a) (2007):

> If a family court learns that the basis, in whole or part, of a petition for infant guardianship brought pursuant to W. Va. Code §[] 44-10-3, is an allegation of child abuse and neglect as defined in W. Va. Code §[] 49-1-3, then the family court before whom the guardianship proceeding is pending shall remove the case to the circuit court for hearing. Should the family court learn of such allegations of child abuse and neglect during the hearing, then the family court shall continue the hearing, subject to an appropriate temporary guardianship order, and

11

Rules 13 and 48a describe occasions when removal is mandatory: "[T]he family court . . . *shall remove* the case to the circuit court" and "the family court *shall* continue the hearing . . . and *remove* the case to the circuit court[.]" *Ids*. (emphasis added). "It is well established that the word 'shall,' in the absence of language . . . showing a contrary intent . . . , should be afforded a mandatory connotation." Syl. Pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982). Accordingly, we have held that

> "Rule 48a(a) of the West Virginia Rules of Practice and Procedure for Family Court *requires* that if a family court presiding over a petition for infant guardianship brought pursuant to W. Va. Code § 44-10-3 learns that the basis for the petition, in whole or in part, is an allegation of child abuse and neglect as defined by W. Va. Code [§ 49-1-201], then the family court is *required* to remove the petition to circuit court[.]"

Syl. Pt. 3, in part, *In re Guardianship of K.W.*, 240 W. Va. 501, 813 S.E.2d 154 (alteration in original) (emphasis added) (quoting Syl. Pt. 7, *In re Abbigail Faye B.*, 222 W. Va. 466, 665 S.E.2d 300 (2008)).

---

remove the case to the circuit court for hearing to be conducted within 10 days, for determination of all issues.

We note that Rule 48a's reference to "W. Va. Code § 49-1-3" is now incorrect. W. Va. Code § 49-1-3 was recodified in 2015 as W. Va. Code § 49-1-201. 2015 W. Va. Acts 506. With this correction, Rule 13 and Rule 48a are, in all relevant respects, mirror images of one other.

## B. Child Abuse and Neglect

The question then becomes whether the family court was confronted with a minor guardianship petition based "in whole or part" on "an allegation of child abuse and neglect as defined in W. Va. Code § 49-1-201[.]" W. Va. R. Prac. & Pro. Min. Guard. 13(a). We find that it was.

Section 201 says that "'Child abuse and neglect' . . . means any act or omission that creates an abused child or a neglected child as those terms are defined in this section." W. Va. Code § 49-1-201 (2018).[9] According to Section 201, an "abused child" is

> [a] child whose health or welfare is being harmed or threatened by . . . [a] parent . . . who . . . knowingly allows another person to inflict . . . physical injury or mental or emotional injury, upon the child . . . . Physical injury may include an injury to the child as a result of excessive corporal punishment[.]

W. Va. Code § 49-1-201 (2017).[10]

The Great-Grandparents' minor guardianship petition contains numerous allegations (a) that the Mother allowed the Boyfriend "to inflict . . . physical injury or

---

[9] We note that this language was added after the family court received the Great-Grandparents' minor guardianship petition. 2018 W. Va. Acts 390. This addition to Section 201 (among other things) clarified that a child need not be the victim of both abuse *and* neglect in order to qualify for protection under the law and does not change our analysis. As noted below, the definition of "abused child" was the same (in all respects relevant to this case) before and after the 2018 amendments.

[10] This portion of Section 201 was amended in 2018, but the amendments were stylistic and do not affect our analysis. 2018 W. Va. Acts 390.

mental or emotional injury" on the Child and (b) that the Child was threatened with more abuse if he returned to his mother's home.[11]  Accordingly, the family court had no jurisdiction to act on the minor guardianship petition.

Indeed, under the circumstances of this case, the family court had no jurisdiction to even appoint a *temporary* guardian for the child.  The basis for the minor guardianship petition was apparent on its face and was not something the family court discovered during the July 5, 2017 hearing.  *Cf.* W. Va. R. Prac. & Pro. Min. Guard. 13(a) ("Should the family court learn of such allegations of child abuse and neglect *during the hearing*, then the family court shall continue the hearing, *subject to an appropriate temporary guardianship order*, and remove the case to the circuit court[.]" (emphasis added)).  When the family court received the minor guardianship petition, the only thing the family court could lawfully do was to "remove the case to the circuit court for hearing." *Id*.

## C. On Remand

Because the family court had no jurisdiction to appoint the Great-Grandparents as temporary or permanent guardians of the child, the family court's July 6, 2017[12] emergency order and its October 10, 2017 final order are void and should have been

---

[11] We note that the Great-Grandparents' allegations are just that—allegations.  Rules 13 and 48a do not authorize a family court to weigh the truthfulness of an allegation of child abuse and neglect.  Making the allegation is what triggers removal to circuit court.

[12] Though the temporary order was signed on July 5, 2017, the docket sheet indicates that the temporary order was filed on July 6, 2017.  *See* W. Va. R. Civ. P. 58.

vacated by the circuit court. As we have said before, "[t]he urgency of addressing problems regarding subject-matter jurisdiction cannot be understated because any decree made by a court lacking jurisdiction is void." *Wilson*, 239 W. Va. at 346, 801 S.E.2d at 224 (alteration in original) (quoting *State ex rel. TermNet Merch. Servs., Inc. v. Jordan*, 217 W.Va. 696, 700, 619 S.E.2d 209, 213 (2005)). Therefore, we vacate (a) the family court's July 6, 2017 emergency order, (b) the family court's October 10, 2017 final order, and (c) the circuit court's September 26, 2018 order, and we remand this case to the circuit court for immediate action on the Great-Grandparents' minor guardianship petition in accordance with Rule 13.

The Great-Grandparents' allegations are serious, however, and we note that the child has been in the Great-Grandparents' care for approximately three years. We have held that,

> [i]n cases involving the abuse and neglect of children, when it appears from this Court's review of the record on appeal that the health and welfare of a child may be at risk as a result of the child's custodial placement, regardless of whether that placement is an issue raised in the appeal, this Court will take such action as it deems appropriate and necessary to protect that child.

Syl. Pt. 6, *In re Timber M.*, 231 W. Va. 44, 743 S.E.2d 352 (2013). Accordingly, and without prejudice to the Mother's rights (as will be determined by the circuit court), we direct that the Child remain in the Great-Grandparents' care until the circuit court can conduct a hearing on the minor guardianship petition, and we direct that this hearing be convened within ten days of the entry of this opinion. *See* W. Va. Code § 44-10-3(e); W.

Va. R. Prac. & Pro. Min. Guard. 4 (2015); W. Va. R. Prac. & Pro. Min. Guard. 13. We further direct that the circuit court, within ten days of the entry of this opinion, afford the Mother substantial visitation with the Child unless (or until) the circuit court determines that such visitation is not in the Child's best interest.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the Family Court of Kanawha County had no jurisdiction to act on the Great-Grandparents' minor guardianship petition and should have removed the petition to the Circuit Court of Kanawha County immediately upon filing. Accordingly, we vacate (a) the family court's July 6, 2017 emergency order, (b) the family court's October 10, 2017 final order, and (c) the circuit court's September 26, 2018 order, and we remand this case to the circuit court for immediate action on the Great-Grandparents' minor guardianship petition in accordance with Rule 13. We further direct that the Child remain in the Great-Grandparents' care until the circuit court can conduct a hearing on the minor guardianship petition, and we direct that this hearing be convened within ten days of the entry of this opinion. Finally, we direct that the circuit court, within ten days of the entry of this opinion, afford the Mother substantial visitation with the Child unless (or until) the circuit court determines that such visitation is not in the Child's best interest. The Clerk is ordered to issue the mandate in this case forthwith.

Vacated and remanded.

16