IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

No. 18-0804

_____

FILED

**November 22, 2019**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

A.A.,
Petitioner Below, Petitioner

v.

S.H.,
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Mingo County
The Honorable Miki Thompson, Judge
Civil Action No. 15-D-351

VACATED AND REMANDED WITH DIRECTIONS

_____

Submitted: November 5, 2019
Filed: November 22, 2019

Paul R. Sheridan, Esq.
Legal Aid of West Virginia
Logan, West Virginia
Counsel for the Petitioner

C. Christopher Younger, Esq.
Logan, West Virginia
Counsel for the Respondent

Marsha Webb-Rumora, Esq.
Guardian Ad Litem for B.A.
Williamson, West Virginia

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.    "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*."  Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E2d 803 (2004).

2.    "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."  Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.    "Rule 48a(a) of the West Virginia Rules of Practice and Procedure for Family Court requires that if a family court presiding over a petition for infant guardianship brought pursuant to W. Va. Code § 44-10-3 learns that the basis for the petition, in whole or in part, is an allegation of child abuse and neglect as defined by W. Va. Code [§ 49-1-201], then the family court is required to remove the petition to circuit court for a hearing thereon.  Furthermore, '[a]t the circuit court hearing, allegations of child abuse and neglect must be proven by clear and convincing evidence.' West Virginia Rules of Practice and Procedure for Family Court 48a(a)."  Syllabus Point 7, *In re Abbigail Faye B.*, 222 W. Va. 466, 665 S.E.2d 300 (2008).

4.      "A temporary guardianship granted over the natural parents' objection based on substantiated allegations of abuse and neglect does not provide a permanent solution for child custody such that it obviates the need for an abuse and neglect petition." Syllabus Point 4, *In re Guardianship of K.W.*, 240 W. Va. 501, 813 S.E.2d 154 (2018).

WALKER, Chief Justice:

Petitioner A.A. is the biological mother of the minor child B.A.[1]  Respondent S.H. is B.A's paternal grandmother and court-appointed guardian.  Petitioner's request for visitation with her child was rejected by the family court, which considered Respondent's allegations of neglect of B.A. by Petitioner and determined that visitation was not in B.A.'s best interest and that Petitioner had failed to show a change in her circumstances warranting a modification of the guardianship order.  The circuit court denied Petitioner's appeal of the family court ruling.  But, Petitioner contends that she has never been adjudicated an unfit parent or been afforded the protections of a statutory abuse and neglect proceeding, and that the family court's order is a de facto termination of her parental rights.  We agree and find that the family court lacked jurisdiction to hear the case.  Under Rule 48a(a) of the Rules of Practice and Procedure for Family Court and Rule 13 of the Rules of Practice and Procedure for Minor Guardianship Proceedings,[2] the family court should have removed this case to the circuit court for hearing.  So, we vacate the family court's order granting Respondent permanent guardianship and remand this matter to the circuit court

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved.  *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013).

[2] Rule 48a(a) of the Rules of Practice and Procedure for Family Court and Rule 13 of the Rules of Practice and Procedure for Minor Guardianship Proceedings are duplicative rules that contain the same language. For ease of reference, this opinion refers to them as Rule 48a(a) and Rule 13.  We include references to both only to ensure that this Opinion is understood as applicable to both.

1

for further proceedings under Chapter 49 of the West Virginia Code, with instructions to hold a hearing within thirty days to consider whether Petitioner should be granted supervised visitation with her child.

## I. FACTUAL AND PROCEDURAL BACKGROUND

B.A. was born in December 2014 and is the minor child of Petitioner A.A. and her husband F.A. In late July 2015, following an incident of domestic violence between Petitioner and F.A., Petitioner and B.A. were taken to a domestic violence shelter by law enforcement and F.A. was arrested.[3]

Approximately two days after the domestic violence incident, Child Protective Services (CPS) received a referral about an alleged incident of domestic violence between Petitioner and F.A. The anonymous source of the referral, described by CPS as "the reporter," also indicated that Petitioner was bipolar, that the baby needed to be placed with "a paternal grandparent because mom is not able to take care of [him]," and that Petitioner "had another child that had cigarette burns on it and that child is placed with the maternal grandparents." The CPS notes describe allegations of maltreatment against Petitioner for "neglect – failure or inability to supply necessary supervision" and against both Petitioner and F.A. for "abuse – domestic violence." That day, CPS went to the

---

[3] The record reflects that there may have been earlier domestic violence incidents between the couple where F.A. was the perpetrator.

domestic violence shelter and conducted a face-to-face interview with Petitioner and B.A. According to CPS notes, F.A. hit the Petitioner, causing bruising on her arms. The CPS worker noted that B.A. "was clean and appropriately dressed. He had no marks or bruising."

According to the CPS Client Contact Report, three days later, a person, described by CPS as "a reporter," also relayed the following information:

> [T]he mother and father got into a domestic incident on Friday July 31st and [F.A.] was taken to jail. . . . this is the [third] incident of [domestic violence] between the couple in the past year all with the child present in the home. The reporter also stated that the mother . . . has pending charges of petty larceny and identity theft, [West Virginia State Police] is investigating. When asked the reporter stated that both parents are taking prescription medication but nothing that is not prescribed. The mother allegedly has a history of mental health issues that she is treated for . . . .When asked the reporter stated that they did not believe that excessive drinking was an issue in the home. The reporter stated that the mother no longer has custody of an older child and the father also does not have custody of [two] older children. The cause though is not known if voluntary or terminated by court. The mother is currently at a shelter [in] Williamson with the child but according to the reporter may be arrested late on Aug[ust] [third] or on Aug[ust] [fourth].

On August 18, 2015, CPS received information that "[Petitioner] has been arrested and her son [B.A.] has been left alone at the shelter."[4] In a Family Functioning

---

[4] Petitioner was arrested for identity fraud and computer fraud after allegedly using F.A.'s stepmother's checking account and routing number to represent herself as the stepmother in order to open up an account to pay a telephone bill. At the time of her arrest,

3

Assessment Report (CPS report) dated August 31, 2015, the CPS case worker observed that

> [Petitioner] is very interactive with [B.A.] and [B.A.'s] eyes light up when [Petitioner] walks into a room. [Petitioner] is protective as a caregiver, as evidenced by her protecting [B.A.] when she was being abused, and leaving the home to keep [B.A.] away from his father. . . Petitioner uses resources necessary to meet [B.A.'s] needs, as evidenced by her getting food stamps and a medical card for him along with WIC benefits. [Petitioner] is emotionally able to intervene to protect [B.A.] as evidenced by her signing temporary custody of her child over to [K.E.], until she is released from jail. [Petitioner] has a strong bond with [B.A.], as evidenced by his reaction, when she walks into the room.

The CPS report found that

> [i]n regards to [B.A.] Maltreatment has not been substantiated, and impending dangers have not been found. Maltreatment in the form of Neglect for Failure or Inability to Supply Necessary Supervision has not been substantiated on [Petitioner]. Maltreatment in the form of Abuse for Domestic Violence has not been substantiated on [F.A.].

The shelter workers indicated to CPS that Petitioner had "done very well with [B.A.]." They reported that Petitioner fed and interacted with B.A. and that they have had no concern with her. They stated that when she got out of jail she could come back to the shelter. The CPS Report noted,

> [Petitioner] protected [B.A.] and herself by going to the shelter and filing an [emergency protective order] and for divorce. [Petitioner] was keeping herself and [B.A.] away from [F.A.],

Petitioner was still residing at the shelter, and B.A. was temporarily placed with Petitioner's half-sister, K.E.

4

[who] did get incarcerated, but the charges were not abuse/neglect related. [Petitioner] signed over custody to an appropriate individual, who will care for and protect [B.A.], until [Petitioner] is released from jail.

## A.  *Guardianship Proceeding*

On September 14, 2015, Respondent filed a Motion for Emergency Order of Guardianship in the family court.[5]  In her motion, Respondent noted that Petitioner and F.A. were both incarcerated and that Petitioner's half-sister, K.E, and K.E.'s parents, were caring for B.A.  Respondent alleged that she was the paternal grandmother of B.A., that K.E.'s family had no blood relation to the child, and that Petitioner had only known K.E. for a short period of time, although they were half siblings.  She contended that B.A. had no prior contact with K.E. and her parents prior to his placement with them, and that K.E.'s family had an inability to focus on B.A.'s needs because of the number of other children in their home.  In that same petition, Respondent alleged that she had had substantial contact with B.A., and had also provided babysitting services for him since his birth.  She further asserted that neither of the biological parents has maintained any employment, with the paternal grandmother, paternal grandfather, and paternal step-grandmother "*providing*

---

[5] On this same day, Respondent also filed a Petition for Appointment of Guardian and/or to Establish Grandparent's Visitation which was identical to the Emergency Motion for Guardianship, but added an extra sentence that contended that visitation between B.A. and the Petitioner should have no effect on the child's relationship with Petitioner and F.A.

*all of the care, nurturing, financial support and emotional support required* and needed by the infant child."[6]

Respondent's motion cited Syllabus Point 1 of *Whiteman v. Robinson*,[7] which states:

> while the Court has continually recognized the right of a parent to the custody of their children, the Court has also recognized and considered parents to be unfit, thereby losing their right to custody, because of misconduct, neglect, immorality, abandonment or other dereliction of duty or otherwise has transferred, relinquished or surrendered such custody.

Relying on *David M. v. Margaret M*.,[8] a divorce case, Respondent also asserted that

> to be considered fit, the primary caretaker parent must: (1) feed and clothe the child appropriately; (2) adequately supervise the child and protect him or her from harm; (3) provide habitable housing; (4) avoid extreme discipline, child abuse, and other similar vices; and (5) refrain from immoral behavior under circumstances that would affect the child.[9]

Respondent argued that it was in the best interests of the child for her to be appointed guardian. On September 17, 2015, the criminal complaint against Petitioner was dismissed without prejudice when the complaining officer failed to appear at the preliminary hearing.

---

[6] Emphasis added.

[7] 145 W. Va. 685, 116 S.E.2d 691 (1960).

[8] 182 W. Va. 57, 385 S.E.2d 912 (1989).

[9] Syl. Pt. 5, in part, *Id.*

So, Petitioner was released from jail, after she had been incarcerated for approximately thirty days.

In her response filed after her release, Petitioner stated that it would be inappropriate to appoint a guardian for her child over her objection since she had not abused or abandoned her child or been "proven to be in any way unfit," and B.A. had been returned to her care. Petitioner did not object to some "temporary visitation for [Respondent] pending [F.A.'s] release from incarceration," noting that she would "like to control the schedule of the visitation." Following a hearing on October 8, 2015,[10] the family court ordered that Petitioner would have primary custodial responsibility for B.A. on a temporary basis, with Respondent having grandparent visitation from Friday at 6:00 p.m. to Monday at 10:00 a.m., unless the parties were able to agree on other days of the week of equal time. F.A. was not permitted contact with the child without the supervision of Respondent.

The record suggests that later, the guardian ad litem filed a motion for reconsideration and for an emergency hearing to "make sure mom was seeing the child."[11]

_____

[10] The transcript for the October 8, 2015 hearing referenced in parties' briefs was not submitted as part of the appendix on appeal.

[11] At some point, Della Cline-Gentile was appointed as guardian ad litem by the family court. That order was not submitted as part of the appendix on appeal. While the guardian ad litem's motion for reconsideration was also not submitted as part of the appendix on appeal, the hearing transcript concerning this motion is contained in the record.

7

Despite Petitioner maintaining legal custody of B.A. under the family court's prior order, the transcript of a hearing on November 12, 2015 reflects that the circumstances had, at some point, changed, as Respondent alleged during the hearing that Petitioner didn't have a home and she "*ended up keeping the child all the time because they couldn't locate her.*"[12] Petitioner's counsel stated at this hearing that Petitioner "ha[d] not had much contact for the past week or so," but did "get a visit" the day prior to the hearing. At the November hearing, temporary physical custody was granted to Respondent, giving Petitioner an opportunity to get "back on her feet" and find an apartment, get moved in, and get a job. At the hearing, the family court told Petitioner:

> This doesn't take any rights whatsoever you have of that baby, ok? Just for right now, he's just going to live with Grandma until – because we want you to have him, you know, you're his Mom. You're always going to be his mom and we want you to be the one taking care of him. But this is just going to help you get on your feet.

---

[12] (Emphasis added). West Virginia Code § 49-1-201 (Repl. Vol. 2015) provides, in pertinent part, that a "neglected child" means a child:

> (A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian;
>
> (B) Who is presently without necessary food, clothing, shelter, medical care, education, or supervision *because of the disappearance or absence of the child's parent or custodian*[.]

(Emphasis added).

8

The court ordered that Petitioner "shall have as much visitation as possible, at least two times per week, with the infant child," and set the next hearing date for January 7, 2016.

Prior to the January 7, 2016 hearing, Petitioner entered a guilty plea to the charges of identity theft that had previously been dropped but were later re-filed, and a sentencing order was entered on December 15, 2015.[13] Petitioner was incarcerated until April 2016. After the January 7, 2016 hearing, the family court entered a temporary order that did not restrict Petitioner's visitation with B.A. Petitioner's husband, F.A., who had been released from jail, appeared at the hearing and consented to Respondent having temporary guardianship.

A Final Order of Appointment of Guardian was entered by the family court on March 18, 2016, while Petitioner was still incarcerated. In this brief order, the family court concluded that it was in the best interest of the child that Respondent serve as guardian. The order noted that "the guardianship appointment made herein shall remain in effect until such time that the appropriate conditions, as applicable are reached and satisfied pursuant to West Virginia Code § 44-10-3(c) and (d), and any other pertinent provisions

---

[13] Petitioner represents that she was sentenced to one year, given credit for 40 days served, and committed immediately to the Regional Jail. She remained incarcerated for approximately four months, until April 2016.

arising under state law."[14]  The order gave F.A. supervised visitation, but was silent as to

Petitioner's visitation rights.

<hr />

[14] West Virginia Code § 44-10-3 (Repl. Vol. 2019) provides, in pertinent part:

> (c) All proceedings shall be conducted in accordance with the Rules of Practice and Procedure for Minor Guardianship Proceedings.
>
> (d) Any responsible person with knowledge of the facts regarding the welfare and best interests of a minor may petition for an appointment of a guardian except a parent or other person whose rights to the minor have been terminated. No guardianship petition may be considered if the child who is the subject of the petition is involved in another court proceeding relating to custody or guardianship or if the petitioner is a parent seeking custodial rights adverse to the other parent.
>
> . . . .
>
> (f) The court may appoint a guardian for a minor if the court finds by clear and convincing evidence that the appointment is in the minor's best interest and:
>
> (1) The parents consent;
>
> (2) The parents' rights have been previously terminated;
>
> (3) The parents are unwilling or unable to exercise their parental rights;
>
> (4) The parents have abandoned their rights by a material failure to exercise them for a period of more than six months; or
>
> (5) There are extraordinary circumstances that would, in all reasonable likelihood, result in serious detriment to the child if the petition is denied.
>
> (g) Whether or not one or more of the conditions of subsection (f) have been established, the court may appoint a temporary guardian for a minor upon a showing that an

immediate need exists or that a period of transition into the custody of a parent is needed so long as the appointment is in the best interest of the minor. The temporary guardian has the authority of a guardian appointed pursuant to subsection (f) but the duration of the temporary guardianship may not exceed six months. A temporary guardianship may be extended beyond six months upon further order of the court finding continued need in the best interest of the minor.

(h) Any suitable person may be appointed as the minor's guardian. A parent shall receive priority subject only to the provisions of subsections (d) and (f) above. However, in every case the competency and fitness of the proposed guardian must be established and a determination made that the appointment is in the best interest of the child.

(i) The court, the guardian or the minor may revoke or terminate the guardianship appointment when:

(1) The minor reaches the age of eighteen and executes a release stating that the guardian's estate was properly administered and that the minor has received the assets of the estate from the guardian;

(2) The guardian or the minor dies;

(3) The guardian petitions the court to resign and the court enters an order approving the resignation; or

(4) A petition is filed by the guardian, the minor, a parent or an interested person or upon the motion of the court stating that the minor is no longer in need of the assistance or protection of a guardian due to changed circumstances and the termination of the guardianship would be in the minor's best interest.

(j) For a petition to revoke or terminate a guardianship filed by a parent, the burden of proof is on the moving party to show by a preponderance of the evidence that there has been a material change of circumstances and that a revocation or termination is in the child's best interest.

11

Petitioner was released from jail in April 2016. Within a month of her release, she attempted to make contact with Respondent by telephone and requested visitation with B.A. Respondent refused and told Petitioner she would have to go back to court prior to getting access to B.A. Respondent later testified that she was afraid she would lose custody of B.A. if she permitted the Petitioner to start visitation without a court order.

**B.** ***Motion to Modify and/or Terminate Appointment of Guardian***

On June 30, 2017, fourteen months after her release from jail, Petitioner sought modification and/or termination of the guardianship order, arguing that she had a material change in circumstances because she had been released from jail. In response, Respondent asserted that she and her ex-husband, L.A. (B.A.'s paternal grandfather) and T.A., his wife, had provided the sole care for the infant since he was five months old and that the child knew only them as his parents. Respondent asserted that Petitioner made absolutely no effort to make contact with the child or support the child and did not remember his birthdays or other holidays.

---

(k) A guardianship may not be terminated by the court if there are any assets in the estate due and payable to the minor. Another guardian may be appointed upon the resignation of a guardian whenever there are assets in the estate due and payable to the minor.

Respondent asserted that the child suffered and continued to suffer from severe and debilitating injuries sustained in the short time he was in the care of the Petitioner. Respondent alleged various injuries sustained by B.A. such as numerous cockroach bites, breathing problems, physical problems, dental problems, and vision problems *as the result of Petitioner's "neglect, abuse and maltreatment."*[15] Respondent alleged that Petitioner had unsuitable housing and filthy, unfit living conditions. She also asserted that Petitioner had an older twelve-year-old son with whom she had no contact. Respondent alleged that Petitioner never paid child support for B.A. and never spent time helping him reach his milestones or nurturing him during that process. Respondent alleged that because the child was so young and did not know Petitioner, it would be psychologically and emotionally damaging for B.A. to be subjected to contact with Petitioner because he did not recognize or remember her.

Alleging that she, her ex-husband, and his wife were the child's psychological parents, Respondent asserted that Petitioner had effectively abandoned the child. Respondent relied again on the two cases cited in her initial motion for guardianship, *Whiteman*[16] and *David M. v. Margaret M.*,[17] regarding the parent's duty of fitness. She

---

[15] Emphasis added.

[16] 145 W. Va. 685, 116 S.E.2d 691.

[17] 182 W. Va. 57, 385 S.E.2d 912.

13

also cited a provision contained in our adoption statute, West Virginia Code § 48-22-306 (Repl. Vol. 2015), "Conduct presumptively constituting abandonment," which provides:

> (a) Abandonment of a child over the age of six months shall be presumed when the birth parent:
> (1) Fails to financially support the child within the means of the birth parent; and
> (2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: Provided, That such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.

L.A. and T.A. also filed a motion to intervene following Respondent's motion and asked that the Court place B.A. in their care, custody and control if Respondent was unable to care for him.

During an extensive hearing held on September 12, 2017, the family court asked the parties whether there was ever a referral made to CPS and if any findings of abuse and neglect were made. Respondent stated that "No, there was nothing like that filed on it. I know, well, one of the troopers had went up to check at the apartments where she had him once before, and he said it was the most roach infested place he had ever been in." Petitioner's counsel indicated that her goal was simply to obtain visitation, and that she was not, at that stage, seeking a termination of guardianship. The family court noted the serious allegations of maltreatment by the Petitioner and stated, "that's one of the reasons that you establish a visitation now, and when these allegations are proven, and we do have

14

serious allegations to deal with, then that kind of complicates the matter." Petitioner's counsel argued that no attempt to terminate the parental rights had been made, so there were due process issues at stake. The family court agreed and stated,

> [B]ut I have to agree, the Department would not have sought to terminate her rights because child's with Grandma. Hey, the Department, I'm not knocking them, I've worked with them. I love them all, but a child (unintelligible) going down the road, I mean, that's just how CPS is. The child could have been abused for years, but that child's now with Grandma. She's safe. The Department goes down the road. You know what I'm saying?
>
> So I would like to know what these allegations are and if she did abuse and neglect this child before I begin to view this.

During the hearing, Respondent's counsel discussed the various allegations of Petitioner's neglect and unfitness with the family court. The court noted that it was very troubled by the fact that Petitioner had gone for over a year without making any sort of legal efforts to ensure visitation with her child once Respondent refused visitation. The Court appointed the current guardian ad litem at that hearing and set the matter for a final hearing to be had at a later date.[18] The order appointing the guardian ad litem specifically stated:

> The Court FINDS a Guardian ad litem is necessary in that the allegations before the Court are as follows:

---

[18] For reasons unclear from the record, the prior guardian ad litem, Della Cline-Gentile, was subsequently replaced with the current guardian ad litem, Marsha Webb-Rumora.

15

A. *The Court has reasonable cause to suspect the parenting issues involve the child's safety.*
B. *That [S.H.] has made allegations of abuse & neglect against [A.A.].*[19]
C. The parties disclosed that there was a CPS investigation at the time the Petition for Guardianship was filed.
D. *Further, the Court FINDS an additional investigation is warranted so that the infant child's safety is protected.*

The report of the guardian ad litem filed on March 6, 2018 provided a history of the parties at the time of the Petitioner's incarceration and detailed Respondent's allegations of abuse and neglect. The report detailed the guardian ad litem's interviews of various family members, including Petitioner, Respondent, L.A., and T.A., who provide care for B.A. while Respondent works, and Petitioner's own parents. She also noted that Petitioner's older son,[20] who is not the subject of this appeal, was living with his biological father's[21] mother under a guardianship order and that Petitioner reported visiting with that child every couple of months.

The guardian ad litem described her visit to Petitioner's home, which had concrete floors and no heat other than a gas stove. Her interview of Petitioner's own parents revealed allegations that Petitioner was asked to leave the homeless shelter where

---

[19] (Emphasis added).

[20] The name of Petitioner's older son is identified inconsistently in the record as both C.L. and T.L. To prevent confusion, we will not reference the older child by initials in this Opinion.

[21] F.A. is not the biological father of Petitioner's older child.

16

she was staying with B.A. due to "association with known drug users."[22]  She also reported that when the police went into Petitioner's home before she went to jail, it was found to be infested with roaches.  The guardian ad litem also referenced various medical records she had in her file, which were not provided in the record here, substantiating medical treatment that the child purportedly received as a result of the injuries he sustained while in the Petitioner's care.  The guardian ad litem's report noted that Petitioner's mother stated that she (Petitioner) should not have custody of him and she does not need to visit with him. She believed it "would be best if he did not know her."

The guardian ad litem's report also discussed the emotional toll that Petitioner's neglect allegedly had taken on her older 12-year-old son.  She mentioned that he too was put into a guardianship because of filthy living conditions and neglect.  She stated that Petitioner has visitation rights with the older child, but she fails to visit him. The guardian ad litem reported that the older child is therefore confused and asks why Petitioner doesn't want to see him.  Based on all of this, the guardian ad litem concluded that visitation was not appropriate for B.A.'s emotional well-being and recommended that Petitioner's request be denied.

---

[22] This assertion appears to be contradicted by a CPS report in the record stating that Petitioner was no trouble at the shelter and the workers would welcome her back after incarceration.

During a hearing on March 8, 2018, the family court heard extensive arguments from the parties. The family court noted:

> It doesn't matter to me that she, she doesn't have to be charged with a domestic charge. She doesn't have to be charged with abuse from, of, of those children. She doesn't have to be charged with someone from CPS of all three of the children.[23] I'm looking at what kind of mother [she] has been to the other two. Nothing. Has nothing to do with those kids.
>
> So why in the world would I let her interrupt a three-year-old child's life?

Because Petitioner had nothing to do with the child for at least six months following her release from jail, the family court made a finding of abandonment. The court also noted that the Petitioner had an older son with whom she had visitation rights, but chose not to visit. Due to time constraints, the family court continued the hearing to a later date.

On May 10, 2018, the parties reconvened for continued argument on the Petitioner's motion. The parties presented their arguments concerning Petitioner's right to visitation, and there was lengthy testimony by both Petitioner and Respondent concerning the allegations of unfitness and neglect. Respondent argued that for purposes of West Virginia law, abandonment is essentially unfitness. And, Respondent contended that there were other issues rising to the level of unfitness, including Petitioner's pattern of behavior

---

[23] The family court was mistaken about the number of children the Petitioner had.

18

established with her older child and failure to have contact with him. Testimony was also presented that Respondent and L.A. and T.A. were essentially psychological parents of the child. The court acknowledged that it was not considering termination, but rather determining the "best interests of the child." The court stated that once it is determined that a person rises to the level of being unfit, then the best interest of the child enters the analysis. The court noted that while Petitioner argued that the initial petition for guardianship was granted solely because Petitioner went to jail, "that was not the only reason. It was the other factors as well." Despite this acknowledgement, the family court found that its continued jurisdiction was proper.

On May 22, 2018, the family court denied Petitioner's request for visitation or any other relief. The order, which contains no references to statutes or case law, relies heavily on the guardian ad litem's allegations of maltreatment, as represented by Respondent and Petitioner's mother, finding that Petitioner had

> made no changes in her circumstances which would lead the
> Court to find that she is now stable, in that she has no
> transportation, no driver's license, no job, no GED, no home
> fit for habitation by children and she has abandoned not only
> the subject infant child, but her older child, as well.

Petitioner appealed the family court's order to the circuit court, which upheld the ruling of the family court without a hearing. Noting that the guardian ad litem's report outlined issues of "abandonment, neglect which has resulted in continuing physical issues for the infant child, a lack of a stable living environment and employment along with other

19

dereliction of duties," the circuit court, citing the best interests of the child, found that "there has been no substantial and material change in the [Petitioner's] circumstances that would warrant a modification of custody." It is from this order that Petitioner now appeals.

## II. STANDARD OF REVIEW

With respect to the standard of review generally applicable in minor guardianship cases, we have stated:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.[24]

At issue is whether the family court had subject-matter jurisdiction under Rule 48a(a) and Rule 13 to hear this case. We have stated that "[w]hether a court has subject matter jurisdiction over an issue is a question of law[.]"[25] Similarly, because the issue of subject-matter jurisdiction necessarily implicates a review of our court rules, our review is plenary: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."[26]

---

[24] Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E2d 803 (2004).

[25] *Snider v. Snider*, 209 W. Va. 771, 777, 551 S.E.2d 693, 699 (2001).

[26] Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

20

## III. DISCUSSION

Petitioner alleges that the family court exceeded its jurisdiction and made a de facto termination of Petitioner's parental rights without the necessary findings or the appropriate procedural steps. She contends that the family court has no jurisdiction to terminate parental rights because if allegations of abuse or neglect are made and colorable, the law requires transfer of the matter to the circuit court under Rule 48a(a) of the Rules of Practice and Procedure for Family Court.[27] She argues that limitations placed by a family

---

[27] Rule 48a(a) provides:

> (a) Removal by Family Court to Circuit Court of Infant Guardianship Cases Involving Child Abuse and Neglect. If a family court learns that the basis, in whole or part, of a petition for infant guardianship brought pursuant to W. Va. Code § 44-10-3, is an allegation of child abuse and neglect as defined in W. Va. Code § [49-1-201], then the family court before whom the guardianship proceeding is pending shall remove the case to the circuit court for hearing. Should the family court learn of such allegations of child abuse and neglect during the hearing, then the family court shall continue the hearing, subject to an appropriate temporary guardianship order, and remove the case to the circuit court for hearing to be conducted within 10 days, for determination of all issues. Once removed, the case (or any portion) shall not be remanded to family court. At the circuit court hearing, allegations of child abuse and neglect must be proven by clear and convincing evidence. Immediately upon removal, the circuit clerk shall forthwith send the removal notice to the circuit court. Upon receipt of the removal notice, the circuit court shall forthwith cause notice to be served in accordance with W. Va. Code § 44-10-3 and to the Department of Health and Human Resources who shall be served with notice of the petition, including a copy of the petition, and of the final hearing to be conducted before the circuit court. Such notice to the

court must stop short of elimination of any possibility of a relationship between a parent and child. Here, she contends that the family court precluded contact between the parent and child and any path to reconnection.

Petitioner also asserts that the family court erred in basing its ruling of no contact with B.A. on the following: (1) alleged mistreatment of the child by Petitioner when the child was in her custody, although no real evidence was presented to corroborate the Respondent's claims other than the testimony of Respondent and the guardian ad litem's report, which contained an interview with Petitioner's mother; (2) Petitioner's alleged abandonment of the minor child, although the lack of contact was due to Respondent's refusal to permit visits or communication; and (3) the anticipated harm that might occur when B.A. was reconnected with Petitioner, because he had no knowledge of her, which was not substantiated with expert testimony.

Respondent counters that the family court's order is not a de facto termination of parental rights because guardianship can be modified and because the

Department of Health and Human Resources shall constitute a report by the family and circuit courts pursuant to W. Va. Code §§ [49-2-803].

The text of Rule 48a(a) retains reference to precodification sections West Virginia Code § 49-1-3 and § 49-6A-2. As reflected in our reference to Rule 48a(a) above, those sections were recodified as West Virginia Code § 49-1-201 (Repl. Vol. 2015) and § 49-2-803 (Repl. Vol. 2015) respectively.

22

language of the court's order "makes no prohibition upon the [Petitioner] from petitioning the family court for modification of her parenting allocation should the circumstances warrant the same." Respondent contends that Petitioner's argument is focused on what is best for her, not the child, and that Petitioner attempts to isolate portions of the family court record instead of reading them in full.

The guardian ad litem concurs with the Respondent that the guardianship may be modified upon proof that the best interests of the child would be served. She asserts that the mother's circumstances are no different than prior to her incarceration. And, the guardian ad litem notes that as of the initial hearing, Petitioner had not seen the child for approximately two years and there were serious allegations of abuse and neglect against the mother warranting a thorough investigation. In her Rule 11(j) child status update,[28] the guardian ad litem reports that the mother still has visitation rights to her older child, but continues to fail to exercise them. Petitioner's mother also told the guardian ad litem that Petitioner has contacted her while B.A. and the older son were at her home, and Petitioner has never asked about their well-being.[29]

---

[28] *See* W. Va. R. App. Proc. 11(j).

[29] The Rule 11(j) report also indicates that F.A. was having regularly scheduled supervised contact "up until a few months ago." She reported that F.A. has recently failed to exercise regular supervised contact with B.A.

While CPS opened an investigation in July of 2015 following the domestic violence incident between Petitioner and her husband and did not find any substantiated allegations at that time, it appears that it has not investigated the specific allegations of unfitness later alleged by the Respondent in this case. Upon our review of the record, there is no question that the allegations of neglect and abandonment made by the Respondent were sufficient to require the family court to transfer the case to circuit court under Rule 48a(a) and Rule 13.

In syllabus point 7 of *In re Abbigail Faye B*.,[30] this Court addressed the requirement for removal of an infant guardianship proceeding to circuit court:

> Rule 48a(a) of the West Virginia Rules of Practice and Procedure for Family Court requires that if a family court presiding over a petition for infant guardianship brought pursuant to W. Va. Code § 44-10-3 learns that the basis for the petition, in whole or in part, is an allegation of child abuse and neglect as defined by W. Va. Code [§ 49-1-201], then the family court is required to remove the petition to circuit court for a hearing thereon. Furthermore, "[a]t the circuit court hearing, allegations of child abuse and neglect must be proven by clear and convincing evidence." West Virginia Rules of Practice and Procedure for Family Court 48a(a).

*Abbigail Faye B*. involved a similar factual scenario—grandparents filing a guardianship petition containing allegations of abuse and neglect. The grandparents contended in that case that the circuit court erred in requiring them to prove abuse and

---

[30] 222 W. Va. 466, 665 S.E.2d 300 (2008).

neglect by clear and convincing evidence.[31]  In rejecting the grandparents' argument, we held that "because the guardianship petition alleged that the subject child had been abused and neglected, the circuit court was obligated to consider the evidence presented in accordance with the standard of proof for abuse and neglect cases generally, i.e., clear and convincing evidence[.]"[32]  In so holding, we noted: "[d]ivesting a child's biological parent of his/her guardianship, or custody, is a very serious matter,"[33] and that "any party seeking to interfere with such rights must bear a heavy burden."[34]

As noted above, Respondent's initial petition for minor guardianship was based, in part, on allegations of child abuse and neglect, as it alleged that neither of the biological parents has maintained any employment, with the paternal grandmother, paternal grandfather, and paternal step-grandmother "providing all of the care, nurturing, financial support and emotional support required and needed by the infant child."  Based on the allegations of neglect Respondent made at the November 12, 2015 hearing—that she was caring for B.A. on a full-time basis because Petitioner did not have a home and they could not locate her—the family court clearly knew that the circumstances had, at some point, changed from those alleged by the Petitioner in response to the initial petition

---

[31] *Id.* at 473, 665 S.E.2d at 307.

[32] *Id.* at 477, 665 S.E.2d at 311.

[33] 222 W.Va. at 478, 665 S.E.2d at 312 (footnote omitted).

[34] *Id.*

25

for guardianship. At that point, Petitioner did not have physical custody of B.A., and Respondent was acting as B.A.'s guardian due to Petitioner's alleged neglect.[35] This, coupled with the family court's statement at the May 2018 hearing that the guardianship was not granted solely because Petitioner went to jail, but because "it was the other factors, as well," confirms that the family court was aware of the allegations of neglect. So, we find that the family court lacked jurisdiction, pursuant to Rule 48a(a) and Rule 13, to hear the case and should have removed the case to the circuit court for hearing.

In reviewing Respondent's guardianship petition, the family court was, rightfully, concerned with assuring the safety of B.A. for the time being, but its approach to these particular circumstances disregarded the need for permanency for B.A. and was procedurally insufficient. We recently discussed the need for permanency in *In re Guardianship of K.W.*[36] In that case, the family court removed respondents' guardianship matter to the circuit court upon allegations of abuse and neglect in accordance with Rule 13 and Rule 48a(a).[37] Ultimately, the circuit court remanded the matter to the family court.[38] On appeal, we determined that remand to the family court was improper, and we stated:

---

[35] See footnote 12, *supra*.

[36] 240 W. Va. 501, 813 S.E.2d 154 (2018).

[37] *Id*. at 505, 813 S.E.2d at 158.

[38] *Id.* at 506, 813 S.E.2d at 159.

26

The circuit court was presented with ample evidence that the mother and these children were chronically abused physically and emotionally sufficient to compel DHHR to file a petition against the parents. Yet, it determined that a petition seeking to adjudicate their parental or custodial rights was unnecessary based on the children's *temporary* placement with relatives. The remand was not only contrary to Rules 13 and 48a, but also jurisdictionally precluded the filing of a petition against the parents, which we are of the conviction was DHHR's nondiscretionary duty to file. While we are cognizant that the circuit court was, appropriately, most concerned with assuring the safety of the children in the immediate context, its approach to these particular circumstances of abuse was insufficient procedurally and substantively insofar as it did not contemplate the need for permanency.[39]

With those concerns at the forefront, we held that "a temporary guardianship granted over the natural parents' objection based on substantiated allegations of abuse and neglect does not provide a permanent solution for child custody such that it obviates the need for an abuse and neglect petition."[40] Finding that the family court lacked subject-matter jurisdiction to issue the permanent guardianship order, we remanded the matter to the circuit court and specifically directed that

> the circuit court is instructed to provide DHHR leave to file an abuse and neglect petition against the parents, if still judged appropriate, and to proceed according to Chapter 49 of the West Virginia Code so as to allow for [Child Protective Services] involvement and development of a permanency plan for these children.[41]

---

[39] *Id.* at 510, 813 S.E.2d at 163 (emphasis in original).

[40] *Id.* at Syl. Pt. 4.

[41] *Id*. at 511, 813 S.E.2d at 164.

Curiously, in this case, the circuit court's order denying Petitioner's appeal noted "the right of a natural parent to the custody of his or her infant child," but then relied upon case law that this right would be honored unless the parent was found to be an "unfit person." That is not the proper standard for adjudicating Petitioner's rights. In light of the allegations of neglect made by Respondent and B.A.'s need for permanency, both Petitioner and F.A.'s parental rights need to be ascertained by the circuit court under the

standards enunciated in Chapter 49 of the West Virginia Code[42] and the clear and

convincing evidence standard articulated in Rule 48a(a) and *In re Abbigail Faye B.*[43]

---

[42] West Virginia Code § 49-4-605 (Repl. Vol. 2015) provides:

(a) Except as provided in § 49-4-605(b) of this code, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights:

(1) If a child has been in foster care for 15 of the most recent 22 months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is 60 days after the child is removed from the home;

(2) If a court has determined the child is abandoned, tortured, sexually abused, or chronically abused;

(3) If a court has determined the parent has committed murder or voluntary manslaughter of another of his or her children, another child in the household, or the other parent of his or her children; has attempted or conspired to commit murder or voluntary manslaughter or has been an accessory before or after the fact of either crime; has committed unlawful or malicious wounding resulting in serious bodily injury to the child or to another of his or her children, another child in the household or to the other parent of his or her children; has committed sexual assault or sexual abuse of the child, the child's other parent, guardian or custodian, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent; or the parental rights of the parent to another child have been terminated involuntarily; or

(4) If a parent whose child has been removed from the parent's care, custody, and control by an order of removal voluntarily fails to have contact or attempt to have contact with the child for a period of 18 consecutive months: Provided, That failure to have, or attempt to have, contact due to being incarcerated, being in a medical or drug treatment or recovery

Because the family court was divested of subject matter jurisdiction in this case,[44] we conclude that Petitioner's remaining assignments of error regarding the rulings of the family court and circuit court pertaining to visitation are moot in light of the fact that the Circuit Court of Mingo County now has jurisdiction over B.A. under Rule 48a(a) and

facility, or being on active military duty shall not be considered voluntary behavior.

(b) The department may determine not to file a petition to terminate parental rights when:

(1) At the option of the department, the child has been placed permanently with a relative by court order;

(2) The department has documented in the case plan made available for court review a compelling reason, including, but not limited to, the child's age and preference regarding termination or the child's placement in custody of the department based on any proceedings initiated under part seven of this article, that filing the petition would not be in the best interests of the child; or

(3) The department has not provided, when reasonable efforts to return a child to the family are required, the services to the child's family as the department deems necessary for the safe return of the child to the home.

[43] 222 W. Va. 466, 665 S.E.2d 300 ("'[a]t the circuit court hearing, allegations of child abuse and neglect must be proven by clear and convincing evidence.' West Virginia Rules of Practice and Procedure for Family Court 48a(a)").

[44] Without question, subject-matter jurisdiction "must exist as a matter of law for the court to act." *State ex rel. Smith v. Thornsbury*, 214 W. Va. 228, 233, 588 S.E.2d 217, 222 (2003). Consequently, "any decree made by a court lacking [subject-matter] jurisdiction is void[.]" *State ex rel. TermNet Merchant Servs., Inc. v. Jordan*, 217 W. Va. 696, 700, 619 S.E.2d 209, 213 (2005) (citation omitted).

30

Rule 13.  We vacate the family court's order and remand this matter to the circuit court with directions to implement the investigatory procedures outlined in Rule 3a(a) of the Rules of Procedure for Child Abuse and Neglect Proceedings,[45] and to hold a hearing within thirty days to consider whether supervised visitation should be initiated with Petitioner during the pendency of the proceedings.[46]  B.A. will remain in the temporary guardianship of Respondent during the remaining proceedings, unless the circuit court deems her unfit for that task.

---

[45] Rule 3a(a) of the Rules of Procedure for Child Abuse and Neglect Proceedings provides, in pertinent part:

> **(a) Administrative Order Regarding Investigation.** Upon receiving a written referral from a family court pursuant to Rule 48 of the Rules of Practice and Procedure for Family Courts, a circuit court shall forthwith cause to be entered and served an administrative order in the name of and regarding the affected child or children directing the Department to submit to the court an investigation report or appear before the court in not more than 45 days, at a scheduled hearing, to show cause why the Department's investigation report has not been submitted to the circuit court and referring family court. . . . The scheduled hearing may be mooted by the Department's earlier submission of the investigation report or, in the alternative, the filing of an abuse and neglect petition under Chapter 49 of the West Virginia Code relating to the matters which were the subject of the family court referral and circuit court administrative order.  The duties of the Department under this rule shall be in addition to the Department's obligations pursuant to W. Va. Code § 49-2-804 regarding notification of disposition to persons mandated to report suspected child abuse and neglect.

[46] We note that any initial decision as to supervised visitation shall be without prejudice to any subsequent evidentiary hearing(s) on this matter under Chapter 49.

## IV.  CONCLUSION

The March 18, 2016 Order of Appointment of Guardian of the Family Court of Mingo County is hereby vacated.  This case is remanded to the Circuit Court of Mingo County for further proceedings consistent with this Opinion.  The Clerk is directed to issue the mandate concurrently with the opinion.

Vacated and remanded with directions.