**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.F. and K.F.**

**No. 24-248** (Pocahontas County CC-38-2023-JA-12 and CC-38-2023-JA-13)

**MEMORANDUM DECISION**

Petitioner Mother J.K.[1] appeals the Circuit Court of Pocahontas County's April 5, 2024, order terminating her custodial rights to A.F. and K.F., arguing that the court lacked subject matter jurisdiction to proceed to disposition and that the DHS failed to file a modified family case plan.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

Prior to the initiation of the abuse and neglect proceedings at issue, the parents were involved in a family court proceeding that resulted in the father being named as the primary custodian and the petitioner receiving supervised visitation at the father's discretion by order entered in February 2023. This was based, in part, upon the petitioner's chronic substance abuse. Following that proceeding, the paternal grandparents ("grandparents") sought legal guardianship of the children in family court in March 2023, based upon allegations of drug abuse, inadequate housing, and abandonment. The matter was removed to the circuit court as a result of the allegations of abuse and neglect. The circuit court held a hearing on the guardianship petition that same month, during which the father contested guardianship and the petitioner was in favor only if she could have visitation with the children. At this hearing, the circuit court granted the grandparents temporary guardianship of the children.

---

[1] The petitioner appears by counsel Denise N. Pettijohn. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Andrew T. Waight. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Michael R. Whitt appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

In April 2023, the DHS filed an abuse and neglect petition alleging that the petitioner previously obtained a domestic violence protective order on the children's behalf against the father's wife ("stepmother") based on the stepmother striking K.F. in the face. On January 20, 2023, the stepmother violated the order by going to the father's home while he was not present. The children were home at the time. After law enforcement was contacted, the grandparents picked up the children and, according to the DHS's petition, the children remained in their home thereafter. The DHS also alleged that the petitioner had "still been going over and seeing the children on a regular basis," but that a no contact order had recently been issued. Further, the DHS indicated that the petitioner failed a drug test the month prior and admitted to using methamphetamine. It appears that the petitioner called the DHS with a referral on herself "because she want[ed] this cleared up" and informed a DHS worker that she "want[ed] a case opened if that means she can talk [to] and see her girls." Ultimately, the DHS alleged that the petitioner abused and neglected the children by "exposing them to her use of illegal substances."

On July 20, 2023, the circuit court held an adjudicatory hearing. The petitioner failed to appear, although she was represented by counsel who stated that she had been in regular contact with the petitioner and had informed her of the adjudicatory hearing. Counsel for the petitioner requested a continuance, which was denied. The court then heard arguments on the father's motion to dismiss for lack of subject matter jurisdiction based on the children being in a legal guardianship. The petitioner's counsel voiced support for this motion. The court explained, on the record, that "but for that temporary guardianship, these children would have had no immediate protection" and likened the guardianship to ratification of emergency removal in other abuse and neglect cases. Ultimately, the court denied the motion.

The court then proceeded to hear testimony in support of adjudication. A Child Protective Services ("CPS") worker testified that the petitioner made a referral in March 2023 asking for her home to be checked after the grandparents filed the guardianship petition. During her conversation with the CPS worker, the petitioner admitted to experimenting with different drugs but denied a drug problem despite a recent positive screen for methamphetamine. The CPS worker explained that there was an extended period of instability in which the father had nowhere to live with the children but the petitioner was unable to assume custody of the children at that time due to her drug use. The grandmother then testified and explained the circumstances of her obtaining physical custody of the children after the incident with their stepmother. The grandmother indicated that the petitioner had been coming to her home to see the children and, on one occasion, smelled so strongly of marijuana that the grandfather asked her to go outside. The grandmother said that the petitioner appeared to be impaired and had been drinking. Ultimately, the court found that the petitioner neglected the children based upon her positive drug screens, admitted use of methamphetamine, and her inability to care for the children "as a result of a Family Court order which did not grant physical custody to her" because of her drug use. The court also stressed that the petitioner visited the grandparents' home while impaired. The court was clear that this conduct threatened the children's health and welfare and that the children were neglected based upon conditions that existed at the time of the petition's filing.

Thereafter, the DHS filed case plans on August 23, 2023. Later that month, the court held a hearing and granted the petitioner's motion for a post-adjudicatory improvement period with no objection. In September 2023, the petitioner filed a handwritten, self-represented request to fire

her attorney for ineffective assistance and to proceed self-represented. At a hearing the following month, the court appointed new counsel for the petitioner. At a hearing in November 2023, the court extended the petitioner's improvement period with no objection. On March 14, 2024, the petitioner filed a motion to dismiss the case based on a lack of subject matter jurisdiction which largely reiterated the father's arguments.

The matter came on for a final dispositional hearing on March 22, 2024. Initially, the petitioner withdrew her motion to dismiss and then explained that she desired to relinquish her custodial rights and consent to legal guardianship. Both the DHS and the guardian ad litem supported this disposition. The court then explained to the petitioner the consequences of relinquishment and questioned her as to the voluntariness thereof. The court also gave the petitioner the opportunity to further discuss the relinquishment with her attorney. Ultimately, the court accepted the petitioner's written voluntary relinquishment and terminated her custodial rights to the children.[3] The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first argues that the circuit court lacked subject matter jurisdiction to proceed to disposition. In essence, the petitioner argues that her adjudication was improper because the children were in a legal guardianship at the time of the petition's filing. This argument, however, is without merit. As we have explained,

> [t]he mere fact that a child is in a legal guardianship at the time an abuse and neglect petition is filed does not preclude a circuit court from exercising subject matter jurisdiction in adjudicating whatever rights a respondent to that petition may still have to that child, provided that the child meets the definition of an "abused child" or "neglected child" as defined in West Virginia Code § 49-1-201 (2018) so as to confer that jurisdiction.

Syl. Pt. 3, in part, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023). We elaborated that, "[t]o exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition." *Id.* Here, the court made the requisite findings to confer jurisdiction, specifically detailing how the petitioner's substance abuse rendered her incapable of caring for the children and resulted in their neglect. Moreover, the temporary nature of the legal guardianship necessitated the filing of an abuse and neglect petition in order to protect the children. *See* Syl. Pt. 4, *In re Guardianship of K.W.*, 240 W. Va. 501, 813 S.E.2d 154 (2018) ("A temporary guardianship granted over the natural parents' objection based on substantiated allegations of abuse and neglect does not provide a permanent solution for child custody such that it obviates the need for an abuse and neglect petition."). As we have explained, a temporary guardianship constitutes "an attempt to protect the[] children from their parents in the

---

[3] The court also terminated the father's custodial rights. The permanency plan for the children is legal guardianship in their current placement.

face of imminent need, not unlike removal by [the DHS] prior to filing a petition under West Virginia Code § 49-4-303 and temporary custodial placement during the pendency of that proceeding under West Virginia Code § 49-4-602." *Id.* at 509, 813 S.E.2d at 162. Further, the petitioner's argument that the children's placement in the father's legal custody precluded her adjudication is without merit, as the evidence clearly demonstrated that her substance abuse rendered her incapable of assuming custody of the children at times when the father was unable to provide the children with safe and suitable housing.

In further support of this assignment of error, the petitioner asserts that the evidence was insufficient to establish that her substance abuse harmed or threatened the children. The petitioner argues that West Virginia Code § 49-4-601(b) requires the DHS to "allege specific conduct including time and place" and "how the conduct comes within the statutory definition of neglect or abuse." The petitioner is also correct that the DHS is required to prove that the conditions existed at the time of the petition's filing by clear and convincing evidence. *See* W. Va. Code § 49-4-601(i). Again, the petitioner's arguments are predicated upon her lack of physical custody of the children at the time the petition was filed. However, as stressed above, the lack of physical custody did not preclude her from neglecting the children by virtue of her substance abuse. Further, the petitioner ignores the fact that she continued to expose the children to her substance abuse while they were in the grandparents' custody, as the evidence demonstrated that she visited the grandparents' home while under the influence and was asked to leave the home as a result of her condition. Accordingly, we conclude that the evidence was sufficient to sustain the petitioner's adjudication for neglect. *See* Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (noting that West Virginia Code § 49-4-601(i) establishing the applicable burden of proof "does not specify any particular manner or mode of testimony or evidence by which the [DHS] is obligated to meet this burden" (quoting Syl. Pt. 1, *In Interest of S.C.*, 168 W. Va. 366, 284 S.E.2d 867 (1981))).[4]

Finally, the petitioner challenges her voluntary relinquishment of custodial rights, arguing that the DHS failed to file an updated family case plan. We find, however, that the petitioner is barred from challenging her voluntary relinquishment on this basis. As we have explained, a "voluntary relinquishment is valid pursuant to W. Va. Code § [49-4-607] if the relinquishment is

---

[4] In further support of this assignment of error and others, the petitioner asserts that she received ineffective assistance of counsel during the proceedings. However, we note that this Court has never recognized ineffective assistance in the context of abuse and neglect proceedings. *See, e.g., In re C.R.*, 22-0189, 2022 WL 3961921 (W. Va. Aug. 31, 2022) (memorandum decision); *In re M.Z.-1*, No. 15-0818, 2016 WL 1456024 (W. Va. April 12, 2016) (memorandum decision); *In re J.F.*, No. 12-0097, 2012 WL 4069520 (W. Va. Sept. 7, 2012) (memorandum decision). We decline to do so here. Further, the petitioner claims that the circuit court considered impermissible evidence in adjudicating her, yet she admits that she raised no objection to the introduction of this evidence below. Accordingly, these arguments have been waived. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). ("Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." (quoting *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999))).

made by 'a duly acknowledged writing' and is 'entered into under circumstances free from duress and fraud.'" Syl. Pt. 3, in part, *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007). The record shows that the petitioner filed a duly acknowledged written relinquishment, and she does not claim on appeal that she entered into the voluntary relinquishment as a result of fraud or duress.[5] As a result, she is entitled to no relief.[6]

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 5, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: September 30, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

---

[5] While the petitioner does not allege fraud or duress, she does allege that the circuit court incorrectly instructed her in regard to the possibility of ongoing visitation with the children. However, the petitioner admits that she never moved for post-termination visitation. Because no party moved for post-termination visitation, the court made no ruling on the issue. Thus, the petitioner cannot be entitled to any relief in this regard.

[6] Given that we find no merit to any of the petitioner's assignments of error and affirm the circuit court's final order terminating her custodial rights to the children, it is unnecessary to address the petitioner's final argument that the circuit court erred in finalizing the children's legal guardianships while her appeal was pending. This is especially true in light of the fact that the petitioner failed to file a notice of appeal with the circuit court, as required by Rule 5(b) of the West Virginia Rules of Appellate Procedure. According to the record, the circuit court did not have notice of the petitioner's appeal until *after* the period for filing a notice of appeal had expired and the guardianships were finalized.